# WM. B. FLEESON, Appellant, v. THE SAVAGE SILVER MINING CO., Respondent.

Under the Act of this Territory passed in 1862 for the Formation of Corporations, &c., stockholders were made personally liable for their portion of all debts contracted whilst they were members of the corporation. Consequently, one who was a stockholder when a suit was commenced against a corporation would be liable for his share of any costs incurred whilst he remained a stockholder, and would be disqualified as a juror.

Causes should not be reversed for trivial errors which could not be reasonably supposed to lead to any injurious result.

If a disqualified juror is forced on a trial jury against the protest of one of the parties, we may reasonably infer injury resulted from such an error.

Fleeson *v.* The Savage Silver Mining Company.

If a juror is challenged for cause, that challenge is overruled, and he is then challenged peremptorily, there does not necessarily arise any inference that the challenging party is thereby injured. An injury could only arise in case he was compelled to exhaust all his peremptory challenges, and afterwards have an objectionable juror placed on the panel for want of another challenge.

When a party in assigning errors, or stating the grounds on which he will move for a new trial, says that the Court erred in doing a certain thing, this is no evidence that the Court did as charged. To establish that fact, it must appear in the statement of facts. The assignment of errors, and the statement of the facts or evidence to sustain these alleged errors, are separate and distinct things. The party moving for a new trial may state the errors complained of in his own language. Neither the Court nor the opposite party can correct that. The Court can only correct the statement of facts or evidence.

When only one peremptory challenge is shown to have been used, the Court will presume the other three were not used.

ON REHEARING.—The mere expression of an erroneous opinion during the progress of a trial by the Judge of a *nisi prius* Court, will not be cause for reversing a judgment. It must be shown that some result injurious to the appellant followed that opinion.

Where an erroneous ruling of a Court on the trial of a cause might reasonably be followed by one or the other of two results—the one perfectly harmless, and the other injurious to the appellant—the record must show which result did follow, or this Court cannot reverse the judgment.

Where a juror is challenged for cause, that challenge is erroneously overruled, and the challenging party afterwards moves for a new trial on the ground that he was forced to exhaust his *peremptory challenges* on this juror, this assignment of error negatives the idea of the juror having served on the panel.

APPEAL from the District Court of the First Judicial District, Hon. C. BURBANK, presiding.

On the trial of this cause, John Gillig was called as a juror. It appeared by his examination, touching his qualifications for a juror, that after this suit was commenced against the defendant he became a stockholder in that corporation, and so continued to be for some time, during which the suit was pending, but had sold out all his stock in the company previous to being called as a juror. It also appeared that, during the pendency of this suit, he had made a contract with a stockholder of the company to purchase from him ten feet or ten shares of stock in the company.

Before this stock was actually transferred to him, he assigned the contract to another party, and at the time of his examination touching his qualification as a juror, he neither held any stock in the company nor had any contract for the purchase of stock therein.

*J. Neely Johnson* and *Robert M. Clarke*, for Appellant.

John Gillig was interested in the result: he had purchased ten feet of ground, to be paid for in the future.    He was in any event bound to the party from whom he purchased.    If the company lost this suit, his assignee would be less able or less willing to meet Gillig's liability to the original vendor.    Consequently, Gillig's liability would thereby be increased.

The amount of interest is unimportant.    The smallest amount disqualifies.    *Executors of Lynch* v. *Horry*, 1 Bay, 229.

An Appellate Court will not reverse a case for errors trivial and not injurious to the party complaining.    But it must appear affirmatively that they are not injurious.

Admitting it to be law (which we only do for the argument) that where a party is compelled by an erroneous ruling to exhaust one of his peremptory challenges, that it is no injury to him if he has other peremptory challenges not exhausted, still this principle does not apply here.    It does not appear here that appellants had other challenges; but on the contrary, it appears that the challenge of Gillig exhausted his right to challenge.

When a party is compelled by an improper ruling to challenge a juror peremptorily, this is error.    (*Baxter* v. *People*, 3 Gilman, 368; *McGowan* v. *The State*, 9 Yager, 184.)    The same rule exists even if it appear affirmatively that the party complaining still had peremptory challenges not exhausted.    (*Lithgow* v. *Commonwealth*, 2 Vir. Cases, 297.)

*C. J. Hillyer*, for Respondent.

Gillig had no interest in the event of this suit.    He had sold his stock, if indeed he ever had any.    He had also assigned his contract for the purchase of stock.    His vendee was equally responsible to him, however this suit might go.

Admitting the Court erred in its rulings as to the juror, the error was harmless.

I.    A bill of exceptions, or statement, must not merely show that an erroneous ruling was made, but must also state such facts as make it apparent that the party excepting has sustained, or may have sustained, material injury thereby.

This record fails to show whether or not Gillig served as a juror. In the absence of such showing, no affirmative error is shown. It is only in criminal, perhaps only in capital cases, where the Courts have reversed cases on an erroneous ruling with regard to the qualifications of a jury, where it was not affirmatively shown that the juror sat on the trial of the case.

In criminal cases there is a great conflict of opinions. The rulings in Virginia are most favorable to appellant's views. In that State it is held, if the Court erroneously overrules a prisoner's objections to a juror, the error is not cured by a subsequent peremptory challenge, even if the prisoner does not exhaust his peremptory challenges. (*Lithgow* v. *Commonwealth*, cited by plaintiff, and *Dandy* v. *Commonwealth*, 9 Grattan, 727.)

In Illinois, there is a dictum to the same effect, the case having gone off on another point. (See case cited by appellant.)

In Tennessee, it is held that the prisoner must have exhausted all his peremptory challenges—and this too must appear affirmatively from the record—before he can be heard to complain of having been forced by an erroneous ruling to challenge a juror peremptorily. (*McGowan* v. *State*, cited by appellant, and *Carroll* v. *State*, 3 Humphrey, 315.)

In California, the same rule is adopted. (*People* v. *Gatewood*, 20 Cal. 146.)

In New York, the peremptory challenge waives the error as to the ruling on the challenge for cause, whether the peremptory challenges are or are not exhausted. (*Freeman* v. *The People*, 4 Denio, 31.)

In Arkansas and Mississippi, the same rule prevails as in New York. (*Stewart* v. *The State*, 8 English; 13 Ark. 720; *Farriday* v. *Selser*, 4 How. Miss. 506.)

Where there is nothing to show that an improper juror sat in the case, Courts are reluctant to reverse causes for mere trivial and unimportant errors committed in empanneling jurors. (*Carpenter* v. *Dunn*, 10 Indiana, 130; *People* v. *Ransom*, 7 Wend. 417; *United States* v. *Merchant*, 12 Wheat. 482.)

Opinion by LEWIS, J., BEATTY, C. J., concurring.

But one error is relied on by the appellant in this case as a

ground for the reversal of the judgment: namely, that the Court erred in overruling the challenge interposed to the juror John Gillig.

That jurors to be competent should stand indifferent, and should occupy no position nor stand in any relation which in contemplation of law renders them incapable of being impartial, there can be no question. They must be superior to every just objection, or in the language of Lord Coke, they should " be indifferent as they stand unsworn." When entering the jury box they should be free from all feelings of interest in the result of the action, from all prejudice against or favor towards either of the parties, with no opinion or conviction which would constitute the slightest obstacle to a fair consideration of the evidence, or a candid conclusion upon it.

We are satisfied beyond all doubt that the juror Gillig had an interest adverse to the plaintiff in this action, and was not, therefore, a competent juror.

The disqualifying interest, however, did not, as claimed by counsel for appellant, result from the contract to purchase a certain amount of the defendant's stock, and which had been assigned by him at the time of the trial, but from the fact that he was a stockholder in the Savage Company at the time this suit was commenced and for some time afterwards, and thereby under the laws then existing became liable for his proportion of the costs incurred during such time. By Section 16 of an Act entitled " An Act to provide for the Formation of Corporations for certain purposes," approved December 20th, A.D. 1862, it is declared that each stockholder should be individually and personally liable for his proportion of all the debts and liabilities of the company, contracted or incurred during the time that he was a stockholder. This law, except the twenty-sixth section, which was annulled and made void by Congress, remained in force until it was repealed by the Legislature of the State on the tenth day of March, A.D. 1865. This action having been instituted whilst that law was in force, and whilst the juror was the owner of a certain amount of stock in the company, his liability for a proportion of the costs incurred in it became established. His interest in the result is therefore clear, beyond all question: for if the plaintiff succeeded in obtaining judgment against

the defendant, he, the juror, would thereby become liable to pay a proportion of the costs incurred during the time he was a member of the company; whilst, on the other hand, if the plaintiff failed, no such liability would exist. Hence, he was evidently disqualified under the fifth subdivision of Section 162 of the Civil Practice Act; and had he tried the cause we would have no hesitation in reversing the judgment for that reason. It is, however, admitted by counsel that he did not, but was peremptorily challenged by the appellant after the Court refused to allow his challenge for cause; and there is nothing in the record to show, nor indeed does it seem to be claimed in argument, that there was any objection to either of the twelve jurors who found the verdict. Such being the case, it is left to be determined whether the error committed by the Court below, in overruling the plaintiff's challenge for cause, was blotted out or cured by the subsequent peremptory challenge, or whether its effect was to prejudice or injure him, notwithstanding the juror did not try the cause. Upon this point we conclude that the peremptory challenge deprived the error, committed in overruling that challenge for cause, of all its force or effect as a ground for reversal of the judgment of the Court below.

Judgments otherwise regular and proper should not be set aside or disturbed for trivial or immaterial errors committed upon the trial. To justify a reversal by an appellate Court, the error should be of such character that its natural and' probable effect would be to change or modify the final result. If it is clear, from the record, that no injury resulted from the error, the judgment should not be reversed, for the appellate Court does not set aside the judgment of an inferior tribunal because of the mere error, but for the injury resulting from such error. True, it is not always necessary for the party complaining to show directly that he suffered injury, because injury is usually presumed to be the result of material error. It is, nevertheless, the injury directly shown, or presumed, which is in fact the inducement to the reversal of the judgment. Hence, the rule observed by all appellate Courts, that only such errors as probably affected the verdict, or substantial rights of the parties, will warrant the granting of a new trial.

The ultimate object of all civil actions is to secure some legal or

Fleeson *v*. The Savage Silver Mining Company.

equitable right. The rules governing the impanneling of juries, the introduction of evidence and the general conduct of trials, are but the means by which such right is to be obtained. Unquestionably, those rules should be closely followed; but if it appear that a departure from them did not defeat or affect the ultimate object of the trial, it would be a mockery of justice to set aside a judgment otherwise proper and regular because of such departure. If the error complained of here was of a character likely to have affected the final result, the judgment should be reversed; otherwise it should be affirmed. If Gillig had acted as a juror, the injury to the appellant would be immediate, as it would deprive him of an impartial trial and force upon him an incompetent juror by refusing to sustain the challenge interposed by him. The presumption of injury in such case would be conclusive, because the juror, being rendered incompetent by law to sit in the case on account of interest in the result, the conclusion would be that he was influenced by such interest in finding the verdict. In that way the error of the Court in overruling the challenge would reach and affect the final result; but as the juror was peremptorily challenged and did not try the cause, how was the appellant injured by the error complained of? Counsel say, by being compelled to use one of his peremptory challenges to set aside a juror who should have been set aside for cause. That, however, could not possibly result injuriously to the appellant unless he had exhausted all his peremptory challenges, and there was some objectionable person on the jury who could not be set aside for cause. If it were shown to this Court that the appellant was improperly deprived of a peremptory challenge under such circumstances, where he may possibly have needed it, perhaps it might be treated as sufficient to authorize a reversal of the judgment. The law gives to each party in a civil action four peremptory challenges. If but one be used, though that be upon a juror who should have been set aside for cause, how can it result in prejudice? The party in such case would have three challenges left, which he could use if any of the jurors were objectionable to him. The fact of his not choosing to use them creates a strong presumption that he was fully satisfied with the jury—that it was unobjectionable to him. To obtain an

impartial jury is the sole object of the law giving the right of challenge. Therefore, when such a jury is obtained, there can be no just grounds of complaint. By his own act in not setting aside any of the jurors when he had the power to do so, it is rendered clear that he had a jury satisfactory to himself. It is claimed by appellant that the record shows that his peremptory challenges were all exhausted. But we find nothing of the kind in the transcript presented to us. The only reference to or mention of such a fact is found in appellant's assignment of errors. He says " the Court erred in refusing plaintiff's challenge to the juror John Gillig for cause, and compelling him to exclude said juror by peremptory challenge, thereby forcing him to exhaust his peremptory challenges, and thus disabling him from excluding other jurors to whom he objected."

It is a proposition too clear for argument, that an assignment of errors cannot be received by an appellate Court as a statement of facts in favor of the party making such assignment. The party wishing to move for a new trial, or to take an appeal, may assign his errors in any form he pleases, and assume any position he may wish, but to make them available they must be sustained by a statement of the facts in the case.

The Court in settling, or counsel in agreeing upon a statement, does not pretend to pass upon the correctness of the assignment of errors, nor indeed has either of them a right to interfere with them. The assertion in the assignment referred to cannot therefore be received or treated as a fact in the case. The admission of counsel that the juror Gillig was set aside, is the only evidence which we have that the appellant used any of his peremptory challenges. As the law gives four peremptory challenges, and only one is shown to have been used by appellant, we must presume that he had three remaining which he did not use. It cannot certainly be presumed that they were all exhausted when the record shows but one of them used. Hence we must treat the case as if the record showed affirmatively that but one peremptory challenge was used by the appellant.

But as we have endeavored to show, the employment of one such challenge, though to set aside a juror who should have been rejected

for cause, will not justify the reversal of the judgment below.    The view which we take of this question is fully sustained by the cases of *Freeman* v. *The People*, 4 Denio, 9, and *Farriday* v. *Selser*, 4 Howard Miss. Rep. 518).    In the first of these cases the Supreme Court say: "Upon this point the prisoner had the power and right to use his peremptory challenges as he pleased, and the Court cannot judicially know for what cause or with what design he resorted to them. He was free to use or not to use them as he thought proper, but having resorted to them they must be followed out to all their legitimate consequences. Had he omitted to make peremptory challenges, his exceptions growing out of the various challenges for cause would have been regularly here for revision. But he chose by his own voluntary act to exclude those jurors, and thus voluntarily, and as I think effectually, blotted out all such errors, if any, as had previously occurred in regard to them."

In the last case, the same question is disposed of in the following manner:

"It appears from the record, however, that when the juror was decided to be competent, Farriday set him aside by peremptory challenge. He did not therefore try the cause, and there is no exception to any of the twelve jurors who found the verdict. We are therefore inclined to the opinion that as the error complained of is not shown to have prejudiced the right of Farriday in any way, that it is not a good reason for reversing the judgment. It is a general rule that an appellate Court will not set aside a judgment otherwise regular and proper on account of a mistaken opinion of the inferior Court, which is not shown to have influenced the final result." So it seems to be held in Tennessee. (*McGowen* v. *The State*, 9 Yerger, 184.)

It was not shown by the record in any of these cases whether the appellant had exhausted his peremptory challenges or not. They therefore clearly sustain the proposition that no injury will be presumed from the error complained of here, unless indeed it be shown by the appellant that his peremptory challenges were all exhausted. In such case, there being a possibility of injury, the judgment might be reversed.

But in this case, as we have shown, the presumption from the record is that the appellant used but one of the challenges, and that he had three remaining unused.

There could therefore be no prejudicial results from the error complained of, and the judgment must be affirmed.

JOHNSON, J., having been counsel in this case, does not participate in the decision.

---

RESPONSE TO PETITION FOR REHEARING.

Opinion by BEATTY, C. J., LEWIS, J., concurring.

The first proposition of counsel upon petition for rehearing is that this Court erred in holding that nothing contained in the assignment of errors could be treated as a statement of fact, admitted to be correct by the other side.   Upon a careful reëxamination of the case, we still think we were right.    On page ten of the record we first find the title of the Court in which the action was pending ; then the title of the case, and then follows this language :

" Plaintiff's statement and bill of exceptions to be used in said Court on a motion for a new trial of said cause, and in the Supreme Court should said motion be denied.

" Plaintiff moved for a new trial on the following grounds, to wit:

" 1. Insufficiency of the evidence to justify the verdict ; and to sustain this, he refers to the statement of the evidence hereto annexed, marked Exhibit A.

" 2. Errors in law occurring at the trial and excepted to at the time by the plaintiff, to wit:

" I. The Court erred in refusing plaintiff's challenge to the juror John Gillig for cause, and compelling plaintiff to exclude said juror by peremptory challenge, and thus disabling him from excluding other jurors to whom he objected.   And to sustain this he refers to Exhibit A, pp. $2\frac{1}{4}$, $2\frac{1}{2}$, $2\frac{3}{4}$, and 3."

A number of other alleged errors of law are stated, and finally, on page eleven of the record, this paper seems to end in this way :

" For the purposes of this motion plaintiff will refer to the docu-

mentary evidence on file, and not included in Exhibit A, as well as the minutes of the Court.

> " J. S. PITZER, and
> " REARDON & HEREFORD,
> > " Plaintiff's Attorneys."

On page twelve we have again the entitling of the Court, the cause, the names of attorneys, etc., followed by this language:

" In the impanneling of the jury, M. M. Mitchell sworn to answer questions." Then follow the questions to and answers of Mitchell. Then the questions and answers of other jurors, the rulings of the Court, the testimony of the witnesses in the cause, etc. Finally the statement winds up as follows: ·

" Case closed and submitted to the jury, who retired, and returned into Court, and delivered a verdict in favor of defendant. The jury being then polled at the request of plaintiff's attorneys, eleven of the jurors concurred in the verdict; one only disagreed to it.

" The foregoing statement is agreed to as correct.

" November 27th, 1865.

> " PITZER & KEYSER, and
> " REARDON & HEREFORD,
> > " Attorneys for Plaintiff.
> " CRITTENDEN & SUNDERLAND,
> > " Attorneys for Defendant."

The question is: When counsel for defendant agreed to the foregoing statement, what did they admit? With regard to the testimony, the answers of jurors to questions touching their competency, and the rulings of the Court, it was no doubt intended to admit that these were correctly stated in the foregoing statement. It was also undoubtedly intended to admit that counsel for plaintiff had filed a paper such as appears on pages ten and eleven of the transcript. But surely it cannot be contended that defendant's counsel intended to admit, or did admit, that all the propositions contained in that assignment were true. The defeated party in any cause may file an assignment of error, containing anything he may choose to insert therein. He may assign a hundred errors having no foundation in fact and no connection with the case. The opposing counsel, in

settling the statement, could not deny the filing of such an assignment of errors. As we understand the admission of defendant's counsel, it is simply that plaintiff had filed an assignment of errors such as is set forth on pages ten and eleven of this transcript.

. That plaintiff's counsel did not consider this assignment of errors as stating the *facts* of the case, is shown on the face of that assignment. The first error of law assigned reads thus :

" 1. The Court erred in refusing plaintiff's challenge to the juror John Gillig for cause, and compelling plaintiff to exclude said juror by peremptory challenge, thereby forcing the plaintiff to exhaust his peremptory challenges, and thus disabling him from excluding other jurors to whom he objected. And to sustain this, he refers to Exhibit A, pages $2\frac{1}{4}$, $2\frac{1}{2}$, $2\frac{3}{4}$, and 3." If the assignment of errors was also to stand as a statement of the facts to support the error, why refer to certain pages in Exhibit A to sustain the assignment ? Undoubtedly the counsel understood the assignment as the Court does : merely as a statement of the point of argument to be used, with reference to another paper, for the facts to sustain the point. If not, why refer to Exhibit A to sustain the exception ?

In the transcript we find nothing which is called Exhibit A ; but we suppose reference is made to the statement beginning on page twelve. That statement simply shows that John Gillig was questioned touching his qualifications as a juror ; that, after the examination, plaintiff interposed a challenge for cause, which challenge was overruled by the Court. Here the statement closes, without showing what after-action was taken. After a challenge for cause is overruled, one of two things usually happens : the challenging party interposes a peremptory challenge, or else the juror is sworn, and sits in the case. A statement, or motion for new trial, or an appeal, should certainly show which of these events actually happens.

Causes are reversed, not because Judges at *nisi prius* entertain wrong opinions upon some point of law arising in the progress of the trial, but because they give some practical effect to such erroneous opinions. A bill of exceptions or statement should not stop with merely showing that the Judge expressed an opinion which was erroneous : it should show that some wrong step was

taken in the progress of the trial.   If a Judge expresses an erro-
neous opinion about some material point in his charge to the jury,
that opinion is error, because the jury are supposed to be influenced
by the erroneous views of the Court.   But if a Court rules that a
certain kind of testimony is admissible, when in fact it is not ad-
missible, this ruling, unless it be taken advantage of by the oppo-
site side, does no harm and is not such error as will reverse a
judgment.   Hence, in such case, a bill of exceptions should not
merely state what was the ruling of the Court, but should also
state distinctly that the illegal testimony was introduced under the
ruling.   So, if a juror is challenged for cause and the challenge is
not allowed, the statement or bill of exceptions should show dis-
tinctly what disposition was made of the juror.   If that is not
shown, we do not see how this Court is to determine that error
was committed.   The mere opinion of the Judge does no hurt to
either side.   It is his action founded on that opinion which is erro-
neous.   If this Court is not apprized of what that action was, how
can it review the case ?   In this case, the statement only shows
what was the opinion of the Court : it does not show what resulted
from that opinion—what subsequent action was taken.

If the opinion could only have produced one result, then indeed
the statement need only have shown what the Judge decided, be-
cause this Court would have understood what necessarily followed.
But if an opinion of a certain character may have been followed
by several courses of action, some of which would have resulted in
injury to the party excepting and others been perfectly harmless,
we cannot say whether any injury was done to the complaining
party.   The affirmative is on the appellant ; and failing to show
error, the judgment of the Court below must be affirmed.

In our former opinion, we say it is admitted by counsel that Gil-
lig did not sit in the case ; and petitioner claims that this *admission*
should not bind appellant, because it was made simply on the facts
presented by the statement, as understood by appellant's counsel ;
that if the assignment of error is not to be considered as contain-
ing facts on which the Court can act, neither should the counsel for
appellant be bound by the facts therein stated which militate against
his client.

12

This position is perfectly correct. But leaving this admission out of the case, appellant is in no better condition.

In the first place, there is no assignment of error on the ground that Gillig did serve as a juror; and if the appellant were allowed to file such an assignment in this Court for the first time, then the record would show two assignments directly contradictory, the one of the other. First, that appellant was compelled to exhaust one of his peremptory challenges to get Gillig off the jury. Second, that: he (Gillig) served on the jury. No possible state of facts could support both these points. Yet both points might have been made in the assignment of errors in the Court below, and no Judge, in settling the statement, could with propriety have stricken either out. The assignment of errors is in the discretion of the appellant. This Court must judge whether the facts stated in the record sustain the assignments. In this case, there being no assignment of error on the ground that Gillig served as a juror, but only that appellant was compelled to challenge him peremptorily, we did assume that the record showed a peremptory challenge. We did this upon the ground that if he had served as a juror, it would have been a much stronger point for appellant. When, therefore, the appellant only complained of being compelled to challenge, we assumed that the juror had not served in the case. If he had served, it is not likely the appellant would have failed to complain of it.

Only two results could reasonably have followed the ruling of the Court on the challenge for cause : the one, that Gillig served as a juror; the other, that he was peremptorily challenged by appellant. If he served, it was clearly error. If the compelling appellant to challenge peremptorily was error, then certainly the case should be reversed, because error injurious to appellant was the necessary result of the ruling, and it would be unnecessary to determine whether this injury resulted from the juror serving or from the challenge.

But as, in our opinion, one of these results would have been error and the other not, it becomes necessary for us to determine, if we can, which result did follow the ruling; or if we cannot determine that, then to settle what the rule should be in a case thus

left uncertain. As we before said, the appellant must make out his case, and if he only established the fact that something was done which might or might not have produced a result injurious to himself, he has failed.

So, too, all reasonable presumptions are to be indulged in favor of the regularity of proceedings in the Court below. This last rule has not much force in this case, because it is conceded the Judge below did err in his rulings; but still, as the chances were even as to whether that error of judgment was followed by action injurious to appellant, or that which was perfectly harmless, even in such case the rule is perhaps not altogether inapplicable.

As there was an assignment of error on the ground that appellant was compelled to exhaust his peremptory challenges on Gillig, and none on the ground that Gillig served as a juror, certainly the presumption is that he was challenged. Whether this exhausted his peremptory challenges, or whether he still had one, two or three at his disposal, did not appear of record. The question then arose, whether this was sufficient to reverse the case. This question was one of very great doubt with the writer of this opinion. Upon an examination of authorities, we find a most decided preponderance in favor of the views we took in the case. The Virginia cases seem to hold that the simple fact of compelling a party to challenge a juror peremptorily when he should have been set aside for cause, would be good ground for granting a new trial.

These decisions were in criminal cases. Possibly, the rule might be different in that State in civil cases. There is also a dictum in 3 Gilman's Reports, 368, to the same effect. This was also in a criminal case. On the other side, we find the several cases referred to in the original opinion. As the record fails to affirmatively show that appellant did exhaust his challenges, we think the original opinion must stand as the law of the case. In this case, probably the appellant, on a more full and complete statement, would have been entitled to a new trial.

We always regret being compelled to decide a case on a mere technicality not affecting the merits, but we cannot go outside of the record.

A rehearing is denied.