### E. D. BROWN *et al.*, Respondents, *v.* LOUIS LILLIE, Appellant.

FIXTURES—WHAT CANNOT BE. A thing which is neither attached to the realty, nor placed upon the land with a view to making it permanent, nor essential to the full and complete enjoyment of the freehold, cannot become a fixture in any sense of the word.

A FIXTURE MUST BE CONNECTED WITH THE FREEHOLD. Connection with or annexation to the freehold in some way is indispensable, as a general rule, to constitute a fixture.

Brown *v.* Lillie.

INTENTION OF BUILDER AS TO FIXTURE. The cases holding that the intention of the person making the annexation to real estate must determine whether the thing annexed be a fixture or not, are overborne by the great weight of authority the other way.

CHATTELS NOT FIXTURES HAVE NO CHARACTER OF REALTY. A personal chattel cannot be converted into real estate or given the character of realty, except by making it a fixture; and if not so attached to real estate as to become a fixture, it retains its character of personalty, entirely unmodified and unaffected by its situation.

SAW MILL—WHEN NOT A FIXTURE. A saw mill built upon timbers lying upon the surface of the ground and constructed with the object and purpose, after sawing the timber within a convenient distance, to be removed to another locality, is a mere personal chattel, and will not pass by a conveyance or patent of the land.

ERROR WITHOUT PREJUDICE. If upon admitted or undisputed facts a verdict for plaintiff upon a question of title to property could not legally have been against him, it cannot be said that the admission of illegal evidence upon the same point, or the refusal of the Court to instruct the jury to disregard it, could have prejudiced the defendant.

INSTRUCTION INAPPLICABLE TO ISSUE. A judgment will not be reversed on account of an erroneous instruction, when it appears that it was not applicable to the issues and could not have injured.

APPEAL from the District Court of the First Judicial District, Storey County.

Brown & Eager, the plaintiffs, being the owners of a saw mill known as the Eagle Mill, in Washoe County, about October 1st, 1869, employed the defendant to sell it and dispose of the proceeds as stated in the opinion. Defendant sold the property, and as a portion of the price received promissory notes to the amount of three thousand dollars, which he refused to account for. The prayer of the complaint was for a delivery of the notes, or judgment for the amount of them; in case a delivery could not be had.

The defendant, in the latter part of 1868, acquired a patent from the State for the land on which the mill was situated; and he claimed to have thereby become the owner of the mill as a fixture, and that his sale of it was for his own use and benefit. Defendant, in addition to the foregoing defense, also set up the statute of frauds as against any agreement of his to dispose of the mill as plaintiffs' agent, or account for the proceeds.

There was a verdict for plaintiffs; and in accordance therewith the judgment was for the recovery of the possession of the notes,

Brown *v.* Lillie.

or in case a delivery thereof could not be had, for the sum of two thousand two hundred and fifty dollars, it appearing the notes were not yet due, and that defendant had expended several hundred dollars in taking care of the property.

*Mitchell & Stone*, for Appellant.

I.   There was no consideration moving to defendant for the agreement to take possession of the mill property and sell the same.   At the time such agreement was made, he had the title to the property which he agreed to sell, and apply the proceeds to the payment of himself, the Bank of California, and whatever remained to plaintiffs.   He took upon himself the performance of a mere voluntary act; which, being without any consideration, was void.

II.   The mill had every element of a fixture.   (*Prescott & Booth* v. *Wells, Fargo & Co.*, 3 Nevada, 90 ; *Merritt* v. *Judd*, 14 Cal. 59 ; *Walker* v. *Sherman*, 20 Wend. 638 ; *Gray* v. *Holdship*, 17 Serg. & Rawle, 413 ; *Morgan* v. *Arthur*, 3 Watts, 140 ; *Lenear* v. *Miles*, 4 Watts, 330.)

III.   Assuming that defendant was the agent of plaintiffs to sell the mill, there is no proof that the proceeds were converted by him.   There can be no conversion of goods by an agent or factor when he is authorized to sell them to reimburse himself for his advances.   If he was an agent at all, he occupied the position of a factor, having the title to the property with the power of absolute disposition of the same, to repay himself his commissions and disbursements.   No action could be maintained against him until the satisfaction and discharge of his lien upon the property therefor.

*Hillyer, Wood & Deal* for Respondents.

I.   The mill was not a fixture.   (*Van Ness* v. *Packard*, 2 Peters, 137 ; *Teaff* v. *Hewitt*, 1 Ohio S. R. 530.)

II.   If we are correct in the statement that this is a mere question of the sale of chattels by an agent for his principal, this Court will not pass upon the correctness of the instruction as to fixtures.

(*Enwright* v. *S. F. & S. J. R. R. Co.*, 33 Cal. 230; *Mills* v. *Barry*, 22 Cal. 240; *Kidd* v. *Temple*, 22 Cal. 255; *Robinson* v. *Imperial S. M. Co.*, 5 Nev. 44.)

III.   The defendant's instructions in relation to consideration were properly refused.   They had no applicability whatever to the case.   Where a consideration for an agreement is shown, Courts only inquire whether it is a valuable consideration, and not whether it is adequate.   (1 Parsons on Contracts, 362.)

By the Court, LEWIS, C. J. :

It was a rule of the common law, that whenever an article of personal property was annexed or attached to the land it became a part of the freehold, and belonged to the owner of the latter.   The property thus changed in its character by annexation to the soil, was called a fixture, and followed the realty by conveyance and descent.   This is even now the general rule, but exceptions have been engrafted upon it by the Courts in favor of trade, and of certain individuals.   Thus it is now the universal rule of decisions that things attached to the land by a tenant, for the purpose of trade or ornament, or for his own domestic use, may be removed; so be it he does it whilst his interest in the estate continues; that is, during his term.   However, it is not important for the purpose of this decision to determine what may be considered trade, ornamental or removable fixtures, but only to ascertain whether that can become a fixture in any sense of the word which is neither attached to the realty, placed upon the land with a view to making it permanent, nor essential to the full and complete enjoyment of the freehold.

We will endeavor to show that it cannot, and that when all these elements are wanting, the thing, whether it be a mill or a dwelling house, or any other character of improvement, is mere personal property, like any other chattel, entirely unaffected by its location or situation, removable from the land and governed by all the rules regulating purely personal property.   We will not claim that decisions cannot be found in opposition to our views and conclusions; for there is probably no subject in the law involved in more ir-

reconcilable confusion, or more subtle refinements, than this question—of fixtures. Our conclusions, nevertheless, are maintained, if not by all the decided cases, yet by such as deserve the highest consideration, and by what is still better, the reason and good sense of the law.

What then is a fixture ? Kent defines it to be an article of personal nature affixed to the freehold. (2 Cow. 344.) Judge Cowen in *Walker* v. *Sherman*, 20 Wend., upon an elaborate review of the cases observes : " But it would be a solecism to call them fixtures where they are not strictly or commonly attached even by bands or hooks to any part of the realty. The word fixture is derived from the thing signified by its being fastened or fixed." Again, after speaking of things which may be constructively annexed, and which we will notice hereafter, the author, in Smith's Leading Cases, says : " Setting these cases of constructive annexation, which are comparatively unimportant, and on which few practical questions arise, completely out of view, the general rule is that to constitute an article a fixture, *i. e.* part of the realty, it must be actually annexed thereto." (Page 238.) " By the expression, annexed to the freehold, is meant fastened to, or connected with it." (Page 239.) See also (*Merritt* v. *Judd*, 14 Cal. 59.)

In *Hill* v. *Wentworth*, 29 Vermont, 429, the Supreme Court of Vermont observes : " From the cases already decided in this State, upon a subject which from its very nature is perplexing, and rendered more so by the conflicting views of different Courts, it is quite evident our Courts have assumed the ground that a chattel is not to lose its personal identity as such, unless it has been substantially annexed to the freehold, in a manner which would not permit it to be separated from it, without material injury to itself or to the freehold. We apprehend there is no sufficient reason why we should, at the present day, recede from the ground already taken by our Courts. It is certainly sustained by many well considered cases."

"'Fixtures," says Taylor : " are chattels or articles of a personal nature, which have been affixed to the land in such a manner as to constitute a part of the realty to which they adhere, and do therefore partake of its incidents and properties." (Landlord and Ten-

ant, 544.) "If there be anything well settled," say the Supreme Court of Ohio: "in the doctrine of fixtures, it is this: that to constitute a fixture, it is an essential requisite that the article be actually affixed or annexed to the realty. The term itself imports this." (*Teaff* v. *Hewitt*, 1 Ohio State Rep. 511.) *Amos and Ferard*, (page 2) say: "It is necessary in order to constitute a fixture that the article should be let into or united with the land, or to substance previously connected therewith." In Dane's abridgment (Vol. 3, p. 156) it is said: "It is very difficult to extract from all the cases as to fixtures, in the books, any one principle on which they have been decided, though being fixed or fastened to the soil, house or freehold seems to have been the leading one in some cases, yet not the only one." The great weight of authority, say the Supreme Court of Connecticut, in *Copen* v. *Peckham*, "is in favor of the doctrine that to constitute a fixture it is necessary that the article should be annexed to the freehold, as the name itself imports." (35 Conn. 93.)

Connection with or annexation to the freehold in some way is indeed held to be indispensable by almost the unbroken current of authorities. Nothing less is deemed sufficient, although more is required by many very well considered cases. Thus in the case of *The Dispatch Line* v. *Bellamy*, 12 N. H., the Court expressed the opinion that actual annexation to the freehold and *adaptation to its purposes* must unite in order to render personal property incident and appurtenant to the realty. So Mr. Dane remarks, in speaking of this question: "Not the mere fixing or fastening is alone to be regarded, but the use, nature and intention." (Abridgement, Vol. 3, p. 156.) So in the case of *Teaff* v. *Hewitt*, *supra*, the Court laid down the rule, that there must be the "united application of the following requirements: 1st, Actual annexation to the realty or something appurtenant thereto. 2d, Appropriation to the use or purpose of that part of the realty with which it is connected. 3d, The intention of the party making the annexation, to make the article a permanent accession to the freehold—this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose and use for which the annexation has been made."

17

Brown *v.* Lillie.

It is true, there are a few cases wherein it is held that the intuition of the person making the annexation must determine whether the thing be a fixture or not; but they are overborne by the great weight of decisions, and are not recognized as law out of the States whose courts have rendered them.

There are, as we stated in the outset, exceptions to this general rule requiring actual annexation, which is recognized by all the courts. The articles not embraced in the general rule, however, are very few, and are held to be constructively annexed, or are of that class of articles which, although moveable and purely personal property in themselves, yet form a part of or are essential to the completion of something which is actually fastened to the soil. As articles embraced in this class may be mentioned: the doors, windows, locks, keys, rings of a house, and an ordinary Virginia rail fence. But it must be borne in mind that the courts holding these peculiar articles to be fixtures, or a part of the realty, do not in so ruling deny the general rule, requiring actual annexation, but only hold that articles of the character mentioned are excepted out of it.

We do not wish to be understood as indorsing these authorities, except so far as they hold that actual annexation to the soil is necessary. All the cases deserving consideration certainly make that an essential requisite, whilst others not only require an actual annexation but something in addition thereto.

What, then, is the condition of that property which is not in any manner or in any sense of the word annexed to the soil? If we understand the law, it certainly cannot be considered a fixture or realty, unless it be of that class embraced within the exceptions to the rule. Is there any reason or rule of law which in any wise modifies the character of buildings or structures so placed on land as not to become fixtures, that they cannot be governed by the rules controlling purely personal property? If a building or any thing else placed on land by the act of man be not a fixture, either removable or otherwise, what is its character or what position does it occupy in the classifications of property? Unquestionably it is purely, simply and unqualifiedly personal property. To hold a thing to be a chattel personal, and still make it subject to a rule applicable only to a fixture, as courts have done in some cases, is a

practice without the semblance of law to sanction it.   We know of
no method of converting a personal chattel into real estate, or
giving it the character of realty, except by making it a fixture ;
and if it be not so attached as to become a fixture, it retains its
character of personalty entirely unmodified or affected by its situ-
ation.

That an erection of any kind placed on the land, but not an-
nexed or fastened to, or imbedded in the soil, and not intended to
be permanent or left indefinitely thereon, cannot be deemed a
fixture, is a proposition we think fully warranted by almost the
entire weight of decisions ; and if not a fixture, we are authorized
in concluding that it is a personal chattel merely, and must be
regulated by the law governing that class of property.

If these conclusions be correct, the saw mill in question in this
case was clearly not a fixture.   Eager, testifying to the character
of the building, said : " The Eagle Mill originally cost in its con-
struction about twelve thousand dollars.   It was built upon large
timbers placed upon the ground.   Upon these timbers brick work
was constructed, and the engine, boiler and machinery attached to
it.   There was no · grading done in laying the foundation of the
mill building, except at the upper corner, which was graded.   The
mill building was constructed as ordinary saw mills are constructed,
and was a substantial building.   It was constructed for the purpose
of sawing the timber within a convenient distance, and then to be
removed to some other locality where there was timber to saw."
The evidence in the record before us is undisputed that the mill
simply rested on the surface of the ground, and was intended to be
removed whenever the timber in its vicinity was manufactured.

Here, then, there was neither annexation to the soil, nor the in-
tention to make the building a permanent structure on the land.
It was therefore a mere personal chattel, in no wise affected by its
situation on the land, not being a part of the realty.   That it
would not pass by a conveyance or patent of the land is too man-
ifest to require argument, for the general rule, and one well settled,
is that any personal chattel cannot be considered as an incident to
the land, even as between vendor and vendee, so as to pass by a
conveyance of the realty ; and so it has been repeatedly held in

cases where the question arose upon facts very similar to those of this case. (See *Peck* v. *Brown*, 5 Nev. 81.) As an exception to this rule may be mentioned growing crops, which although deemed mere personal chattels, still pass to the vendee by conveyance of the land. Others might be mentioned; but with the exceptions we have nothing to do, for it cannot be claimed that this case comes within them. The patent of the land then obtained by the defendant did not affect the title to or property in the mill; that remained in Brown and Eager as would the property in any article of personal nature which the defendants may have found on the premises. This conclusion respecting the character of the mill and the title to it will enable us very readily to dispose of the various points made by counsel for appellant in favor of a reversal of the judgment; and that they may be clearly understood, it will be well to state a few of the leading facts bearing upon them as they are presented by the record.

About the time of procuring the patent, or very shortly afterward, it was testified by Eager that an agreement between him and Lillie was entered into, wherein he, Lillie, was to take possession of the mill with its machinery, and sell it for such reasonable price as he could obtain, he to retain a certain sum out of the money so obtained in payment of a debt due him by Brown and Eager, to pay about two thousand dollars of indebtedness, which they were owing the Bank of California, and pay the balance to the plaintiffs. It is admitted that the defendant took possession of the mill, sold it for three thousand dollars, and that he has paid nothing either to the Bank or the plaintiffs, but retains the entire sum.

It is claimed, 1st, that the verdict is contrary to the evidence, because it is proven and not disputed that Lillie acquired the title to the land upon which the Eagle Mill was situated by patent from the State, from which it is argued the defendant became the owner of the mill and machinery; and such being the case, the verdict could not properly be in favor of plaintiffs. But we have shown that the mill and machinery did not pass to the patentee, but remained the property of the plaintiffs; and this is a sufficient answer to the first point.

2nd. It is said there was no consideration for the contract

between Eager and the defendant, respecting the sale of the mill by the latter. This point also is doubtless based upon the assumption that the mill and machinery were conveyed to Lillie by the patent. As, however, the plaintiffs were the owners at the time of the contract, and as the agreement is executed to the extent of the sale by Lillie, it will hardly be insisted that the want of consideration can be relied on by Lillie as a defense to the recovery of the money obtained by him for the plaintiffs' property.

3rd. The instructions asked by the defendant, to the effect that any parol contract entered into between plaintiffs and defendants, whereby the latter agreed to procure title from the State to the land on which the mill in question was situated, for the benefit of the plaintiffs, was void by the statute of frauds, should perhaps have been given ; as some evidence was admitted to establish such agreement between the parties. No question respecting the title to the land being in the case, the only tendency of the testimony so admitted was to make out or strengthen the plaintiffs' property in the mill and machinery. The evidence on that point was perhaps irrelevant, but being admitted, the instructions referred to were asked for the evident purpose of precluding the jury from finding the title to the mill and machinery to be the plaintiffs' upon such evidence. But if the defendant acquired no right to the mill or machinery by the patent, (and he claims it by no other title) then the jury were bound to find the plaintiffs to be the owners, notwithstanding the defendant may have acquired the absolute title to the land by means of the patent. Upon undisputed and admitted facts, the property in the mill and machinery is shown to be in the plaintiffs, independent of the title to the land. Had the jury found otherwise, it would be the duty of the Court to set aside the verdict. The conclusion is, that the defendant could not have been prejudiced by the evidence, showing the agreement to procure title to the land for the plaintiffs, nor by the refusal to give the instructions respecting such agreement. If upon admitted or undisputed facts, the verdict upon the question of title to the mill could not legally be against the plaintiffs, it cannot be said that the admission of illegal evidence upon the same point, or the refusal of the Court to instruct the jury to disregard it when admitted, could

prejudice the defendant. And if not prejudicial to him, it will not justify a reversal of the verdict or judgment. (See *Fleeson* v. *Savage Silver Mining Co.*, 3 Nev. 162.) The judgment upon this ground cannot therefore be reversed.

4th. It is also complained that the Court erred in instructing the jury, thus: "A saw mill erected by a person about to engage in the lumber business upon the public lands of the United States, for the purpose of manufacturing lumber, and not with the intention of making a permanent improvement of the land, and of such a character that the same may, without injury to the soil on which it is placed, be removed to another locality and there made available for a similar purpose, is not a fixture which can be held as realty by a subsequent purchaser from the Government, as against the builder of the mill desiring to remove or dispose of the same. The mill in such case is personal property, and belongs to the person who erected it." As applied to the facts of this case, we think we have shown this instruction to be correct, and hence properly given.

5th. Again, it is claimed the Court erred in giving an instruction to the effect that if the jury believed from the evidence that the promissory notes described in the complaint were the property of the plaintiffs, and that they by their attorneys, prior to the commencement of this action, made demand on defendant for said notes, and that prior to said demand, defendant had wrongfully converted the notes to his own use, "then the jury are instructed that defendant, by such conversion, lost any lien he had upon them, for advances made by him for plaintiffs." This instruction is upon a question in no wise in the case. There is no claim by the defendant that he had a lien on the notes referred to. His only defense is that they belong to him—were his own property. Hence the instruction was simply impertinent to the issues. If the defendant did not claim a lien upon the notes, surely an instruction that under the circumstances mentioned in the instruction he had lost it, could not prejudice his rights in this action. Under his pleading in this case, he would not be allowed to rely on the defense of a lien upon the notes, nor could the jury properly find in his favor on that ground. The instruction is therefore simply not applicable to the issues, and could not possibly have injured him. Hence, even if

incorrectly stating the law, it is not such error as to warrant a reversal.   (*Shorter* v. *The People*, 2 Comstock, 193.)

This disposes of all the points argued by appellant, and as we find them untenable, the judgment must be affirmed.

It is so ordered.