## JOSLIN v. LINDER et al.

A purchaser from a landlord with notice cannot claim fixtures which the tenant has a right to remove, but a purchaser without notice takes them as part of the realty.

The provisions of section 899, Civ. Code, giving tenants the right to remove property placed on leased land, etc., are incorporated in the lease by relation, and has the same effect on a purchaser from the lessor that a covenant in a lease would have.

Defendant removed a certain fence placed by him on land to which he had a lease, but which had been subsequently leased to the plaintiff who took it without actual or constructive notice, the prior lease not being recorded. Neither plaintiff nor defendant lived on the land. **Held** that, although section 899, Civ. Code, permits a tenant to remove fixtures, defendant's lease, not being recorded, was void under sections 986, 987, Civ. Code, as against plaintiff, and hence that defendant had no right to remove the fence.

In an action for damage for the loss of a horse occasioned by defendant's unlawful removal of a fence from plaintiff's land, the burden of proof rests upon the plaintiff to establish that the loss of the horse was the proximate result of defendant's unlawful act.

Proximate cause of an injury is the immediate cause, it is the natural and continuing sequence, unbroken by any intervening cause, preceding the injury which could not have happened. "Proximate cause" means probable cause.

In an action for the loss of a horse, evidence **held** insufficient to show that the removal of a fence was the proximate cause of the loss.

(Opinion filed November 16, 1910.)

Appeal from Circuit Court, Stanley County. Hon. LYMAN T. BOUCHER, Judge.

Action by Peter Joslin against Emma Linder and another. From a judgment for plaintiff, defendants appeal. Reversed and remanded.

*Gaffy & Stephens,* for appellants. *John F. Hughes,* for respondent.

McCOY, J. Plaintiff brought suit against defendants to recover, as damages, the value of a certain mare alleged to have become lost by reason of the unlawful and negligent acts of defendants in tearing down and removing a certain pasture fence. There was a verdict and judgment in favor of plaintiff. Defendants appeal. It appeared on the trial that one Robertson was the

owner of and resided upon certain real estate in Stanley county. In December, 1907, Robertson, by written instrument, leased said land to plaintiff for the period of one year. During the winter of 1907-08 plaintiff had, in a fenced pasture on said land, four head of horses. Plaintiff resided on other land in the same vicinity. In April, 1908, plaintiff also placed in said fenced pasture two other horses, making a total of six horses therein. Plaintiff, immediately after placing the two head of horses in said pasture, left his home and went to the agency, being absent about ten days. Plaintiff testified that he examined the fence around said pasture the night before going to the agency, rode the fence and stapled it up and left all in good shape. Part of the fence had three wires, and part two wires, on posts, varying from one to two rods apart. At the time plaintiff placed said two horses in said pasture he was informed that defendant Emma Linder also had a lease to the same land, and that the fence around said pasture had been placed there by defendants; and defendants were then also notified that plaintiff had a lease of said land. Defendants also resided on other lands in the same vicinity. Some three or four days after plaintiff went to the agency, defendants, under claim of right, took down and removed a portion of said wire fence. In 1903 Robertson also by written instrument leased to defendant Emma Linder the said lands for the purpose of pasturage; that the term of said lease expired on the 22d day of October, 1908; that in 1907 said defendants constructed said fence upon said leased premises, and that the said lease was never recorded. Plaintiff had no knowledge of defendants' said lease at the time Robertson executed and delivered to him the second lease. When plaintiff returned from the agency the two head of horses, last placed in said pasture by him, were gone. One he subsequently found, the other he never found. The defendant Alfred Linder (a son of Emma Linder) and one Jameson, who assisted him in taking down and removing said fence, each testified that at the time of the taking down of said fence they rode over said pasture and searched the same for the horses of plaintiff; that only four horses were in said pasture at that time; that these four horses

were placed in defendants' pasture and subsequently returned to plaintiff. · Alfred Linder also testified that at one place on the east side of said pasture there was a washout at a place where the fence crossed a creek, and that the bottom wire was from three to four feet from the ground. Plaintiff also testified that the two mares, which were lost, were the animals last placed in said pasture by him the evening before he went to the agency, and that they were what was termed "bunch quitters"—that is, mares that would not stay with the bunch of strange horses with which they were placed in the pasture, but were always quitting the bunch and trying to go back to where they had raised colts the year previous. At the close of all the evidence defendants moved the court to direct a verdict in their favor on the grounds that the evidence fails to show that at the time defendants removed their fence from the said land that plaintiff had any more than four head of horses within said pasture; and for the reason that the undisputed evidence shows that in 1907 defendants, under a written lease, took possession of the land in controversy and inclosed the same with a good and substantial fence and the evidence fails to show that they were dispossessed by any person. Defendants also moved for a new trial on the ground of error in not directing a verdict in favor of defendants, and also on the ground that the evidence was insufficient to justify the verdict, and that the verdict was contrary to the evidence, in that the evidence failed to show that the property, claimed to have been lost, was lost by reason of any act or omission of defendants. The motion to direct a verdict and motion for a new trial was overruled, and to which rulings of the court the defendants duly excepted, and now urge the same as error.

As against the landlord Robertson, under section 899, Civ. Code, the fence in question, placed on said land by defendants, remained the personal property of defendants and might have been removed by them at any time before the expiration of the said lease to Emma Linder; but, Emma Linder, not having recorded her lease, under sections 986 and 987, Civ. Code, said lease was void as against the lease to plaintiff who stood in the position of

a subsequent purchaser without notice of defendants' lease, or that defendants had any interest in said fence. The rule seems to be well settled that as between the landlord and tenant and those claiming under the landlord with notice, such fixture would remain the personal property of the tenant, removable by the tenant during his term, and would not pass by a conveyance of the title of the realty by the landlord to a purchaser with such notice. Myrick v. Bill, 3 Dak. 284, 17 N. W. 268; Sweet v. Myers, 3 S. D. 324, 53 N. W. 187; Coombs v. Jordan, 3 Bland (Md.) 284, 22 Am. Dec. 246; 23 Cent. Digest, Title Fixtures, §§ 1 to 25; Parker v. Redfield, 10 Conn. 496; MacDonough v. Starbird, 105 Cal. 15, 38 Pac. 510; Trust Co. v. Mill Co., 99 Cal. 636, 34 Pac. 321; Brown v. Lillie, 6 Nev. 244; Tifft v. Horton, 53 N. Y. 377, 13 Am. Rep. 537; Teaff v. Hewitt, 1 Ohio St. 511, 59 Am. Dec. 634; Gray v. Holdship, 17 Serg. & R. (Pa.) 413, 17 Am. De.. 680, and see note at end of the case; Merritt v. Judd, 14 Cal. on pp. 67 and 68. The great weight of authority seems to hold, although with some exceptions, that when the landlord transfers the real estate to an innocent purchaser, without notice, that he takes such fixtures as a part and parcel of the real estate, and is not affected by the agreement between the landlord and tenant permitting the tenant to remove the article annexed to the realty during his term. The provisions of section 899, permitting a tenant to so remove his property annexed to the landlord's realty would have the same effect as though written in the lease by the agreement. Under the evidence in this case there were no attending circumstances that would tend to give plaintiff any notice or put him upon inquiry as to defendants' claim to the fence in question. Defendants, as well as plaintiff, never actually resided on this pasture land in question, both residing on other adjacent lands. Ostensibly and on the face of things the fence was a part and parcel of this pasture land on which Robertson, the real owner, resided. Therefore, we are of the opinion that the defendants had no lawful right to remove said fence as against the plaintiff. James Leo Co. v. Jersey City Bill Posting Co. (N. J. Sup.) 73 Atl. 1046; Rowand v. Anderson, 33 Kan. 264, 6 Pac.

255, 52 Am. Rep. 529; Myrick v. Bill, 3 Dak. 284; Porter v. Pittsburg Steel Co., 122 U. S. 267, 7 Sup. Ct. 1206, 30 L. Ed. 1210; Prince v. Case, 10 Conn. 375, 27 Am. Dec. 675; Binkley v. Forkner, 117 Ind. 183, 19 N. E. 753, 3 L. R. A. 33; Bringholff v. Munzenmaier, 20 Iowa, 513; Ridgeway Stove Co. v. Way, 141 Mass. 557, 6 N. E. 714; Stevens v. Rose, 69 Mich. 259, 37 N. W. 205; Climer v. Wallace, 28 Mo. 556, 75 Am. Dec. 135; Arlington Mill Co. v. Yates, 57 Neb. 286, 77 N. W. 677; Brennan v. Whitaker, 15 Ohio St. 446; Muir v. Jones, 23 Or. 332, 31 Pac. 646, 19 L. R. A. 441; Wade v. Brewing Co., 10 Wash. 284, 38 Pac. 1009; 2 Tiff. Landlord & Tenant, § 246.

The burden of proof being on plaintiff, it was incumbent on him to establish by evidence, not only the unlawful act of defendants, but also that the loss of said horse was the proximate result of said act of defendants in removing said fence. If said horse escaped from said pasture and was not therein at the time defendants removed said fence, then it necessarily follows that the removal of said fence, however unlawful and negligent the same might have been, was no part of the proximate cause which produced the loss of said horse. We are of the opinion that the evidence is wholly insufficient to show that the loss of the horse in question was the result of the removal of said fence. The evidence of Alfred Linder and witness Jameson that they searched said pasture, and that there were only four horses therein at the time the fence was removed, stands undisputed. The evidence of Alfred Linder that on the east side of the pasture where the fence crosses the creek there had been a washout, and the bottom wire was from three to four feet from the ground is also undisputed. The evidence that the lost horse was a "bunch quitter" is also undisputed. That a large portion of the fence was constructed of two wires, on posts, in places two rods apart, is undisputed. The evidence of plaintiff that he rode the fence the evening before he went to the agency and stapled and left it all in good shape does not tend to show the condition of the fence at any point. It is only his conclusion. It is a matter of common knowledge that a two wire fence on posts two rods apart, where the bottom wire is

from three to four feet from the ground, will not prevent horses from escaping that are inclined to be "bunch quitters" with a desire to escape. Giving full force and effect to plaintiff's evidence it shows that the lost horse was placed in the pasture the evening before he left for the agency, some three or four days before the removal of the fence. When he returned some ten days later the fence had been removed and the horses gone. This is the sum total of plaintiff's evidence to connect the loss of his horse with the removal of the fence. If the fence inclosing said pasture had been shown to be a good, solid, substantial fence, from which horses could not naturally or ordinarily escape, then, if there were no other circumstances showing any other intervening cause for the loss of said horse, it might naturally be concluded that the loss was in consequence of the removal of the fence. But that is not this case. Where the injury complained of is not known by common experience to be the natural and usual sequence of the act complained of, and the injury does not, according to the ordinary course of events, necessarily follow from the act, then they are not sufficiently connected to make the act a proximate cause. 24 Cyc. 528. Proximate cause of an injury is the immediate cause; it is the natural and continuing sequence, unbroken by any intervening cause, preceding the injury, and without which it could not have happened. Elliff v. O. R. & N. Co., 53 Or. 66, 99 Pac. 76; Hull v. Thomson Transfer Co., 135 Mo. App. 119, 115 S. W. 1054; 1 Thompson, Neg. §§ 42 to 52. Proximate cause means probable cause. Remote cause means improbable cause. 1 Thompson, Neg. § 50. Under the evidence in this case it is so improbable that the horse in question was lost in consequence of the removal of the fence, that as a matter of law, the evidence was insufficient to show that the removal of the fence was the proximate cause of plaintiff's injury, and defendants' motion for a new trial should have been granted.

The judgment of the circuit court is reversed and a new trial ordered.