## SOUTHERN COUNTIES ICE CO. v. RKO RADIO PICTURES, Inc., et al.

### No. 1073.

District Court, S. D. California, S. D.
May 28, 1941.

158

Mitchell, Silberberg, Roth & Knupp, of Los Angeles, Cal., for defendant.

Thos. P. Menzies and M. W. Phelan, both of Los Angeles, Cal., for plaintiff.

JAMES ALGER FEE, District Judge.

This action was brought to recover for the loss of a building by fire. Formal issues were made by the pleadings. Thereafter a pre-trial conference was held and a pre-trial order was drafted by the attorneys and signed by the court. Reference is made in this order to the pleadings, contrary to the proper practice. Therefore, both the pleadings and the order must be taken into consideration. The cause was tried before the court without a jury.

The facts upon which the parties are in agreement will be stated first. Southern Counties Ice Company is a California corporation which jointly with certain individuals was the assignee of a lease made by the Southern Pacific Company to certain lands from month to month and the owners of a vegetable packing house with equipment which was upon the leased premises. Upon thirty days' notice the owners would be required to move the building under the lease. The owners have assigned all rights to plaintiff.

RKO Radio Pictures, Inc., is a Delaware corporation. The employees of defendant entered the premises above described and began the erection of a set upon the platform of the packing house. They left at about five o'clock in the afternoon and between seven thirty and eight o'clock at night the packing house was destroyed by fire.

Further facts are found in the evidence. The employees of defendant had permission to erect a set in the vicinity but mistook the location and entered and used the packing house. Some employees were smoking while working there. Upon departing some clothing and certain tools were left by these employees in the packing house or on the platform thereof. The defendant, contrary to a well established custom, placed no guard when the employees left. The fire was observed about the time an explosion was heard in the end of the building furthest from the place where defendant's employees had been working, but the flooring was burned through near the door next the set, and there only. The defendant's set was not burned owing to the exertions of the fire department and defendant's employees. Thereafter defendant finished the set and occupied the premises for several days.

Defendant introduced testimony of its employees to the effect that the packing house doors were open, that there were signs that fires had at sometime been built therein on a sheet iron and that some pans which might be used in cooking were hung in a recess on the platform. There was no evidence to show how recent any use of the premises had been nor was any person seen thereon except the employees of defendant.

In California, the forms of action were abolished by enactment of the Code of Civil Procedure soon after the entry of the State into the Union. The codes, of which that adopted by California was one, were early attempts to escape from the "archaic" precedents of common law pleading and procedure. The inevitable result followed. During the lapse of ninety years since this "reformed procedure" was adopted a hardened shell of judicial precedent has been laid upon the supposedly flexible rules of the code. Escape from such hard and fast guides of procedure has been effected for the national courts by the adoption of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which discard the "cause of action" of the common law and the codes. If the vast output of decisions upon procedure announced by trial and appellate courts under these rules be considered, it cannot be doubted that a foundation for a still more stately chamber has been laid, the walls of which will be equally confining for subsequent generations. Moreover, it has been pointed out that even though the forms of action be procedurally discarded, thinking about the substantive law is still canalized by the ancient writs, in terms of which even modern law texts and decisions are written.[1]

The substantive law of California which, by decisions of the Supreme Court of the United States[2] is made controlling in the determination of this case, is so conditioned and so written. The pre-trial or-

---

[1] For a full discussion see 16 Oregon Law Review 103–120.

[2] Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L. R. 1487.

der drawn by the attorneys frames questions of substantive law in the terms of the common law writs. Furthermore, where decisions of other courts are cited which are assumed to be of weight in California, these likewise are based on concepts which developed with the writs. Since the writs furnish the skeleton on which the flesh of the substantive law was laid, the development of the issues in this case was very accurate. In any event the questions of law framed suggest trespass, trover and negligence or case as the foundation of the claim and defense.

The court must now make choice and determine whether a wrong has been committed and as to whether legal liability can be predicated thereon.

 The land was under lease to plaintiff. The building thereon may be treated as real property, or by the subsequently developed fiction of constructive severance, as personal property. (a) If these acts be viewed as a trespass to realty then there was disseisin under the common law ideas. The recovery of the land and damages for change of condition makes plaintiffs whole.[3] (b) If the building be viewed as a chattel, the dominion exercised by employees of defendant was a conversion. If the articles could be returned undamaged, plaintiffs might not suffer injury. But plaintiffs could not be required to accept a chattel which was damaged after defendant had converted it to its own use. The limits of liability are thus scientifically stated. The use of the language of "causation" or "consequence" is inaccurate if this theory be used. (c) In the case of a casual entry upon real property or a casual use of a chattel, there is no compensable wrong unless the damage was a result of the actual entry or use.[4] (d) Likewise, if in their acts while upon the property, the employees did not use reasonable care

in view of all the circumstances and damage resulted therefrom, plaintiffs are entitled theoretically to recover. The standard of care, however, would be higher for a wrongdoer than in the ordinary case, due to the use of land and buildings unwittingly without the consent of the owner.[5]

 The court finds that defendant entered upon and exercised complete dominion over the leased land and the packing house and continued in possession thereof for several days. This occupancy was without the knowledge or consent of the owners and lessees. The defendant was in good faith and mistook the location of the land. The fire resulted directly from the entry and exercise of dominion by defendant. No other intervening cause was shown by the evidence. Defendant further did not exercise reasonable care in leaving without guard a wooden building on the platform of which its employees had been smoking on a July day in Southern California, nor in view of the fact known to defendant but not to the owners that at sometime other persons might have lighted fires in the packing house.

With these findings, the defendant is liable whatever theory is adopted. It is, of course, no defense that defendant did not intend to and had no present knowledge that the employees were engaged in a trespass. A consideration of the theory of liability will be of value.

 Where one exercises complete dominion over the land or personal property of another, however unwittingly, and during the period of his use thereof a loss or damage occurs, he should be held to act, because of the invasion, at his peril and to be responsible for any loss or damage, even though due to an irresistible or extraordinary force, and even though the event was entirely unexpected.[6] The person so as-

[3] There is no proof that any other person was on the land after defendant took possession. Clark v. Torchiana, 19 Cal. App. 786, 127 P. 831, does not apply therefore.

[4] Joslin v. Linder, 26 S.D. 420, 128 N. W. 500, no connection shown between cutting of fence and loss of a horse.

[5] This may be illustrated in Newsom v. Meyer, 102 Conn. 93, 128 A. 699. Even one rightfully in possession has the burden of proof to show that he used due care. Ferguson v. Green, 99 Cal.App. 641, 278 P. 1058.

[6] Eten v. Luyster, 60 N.Y. 252, is close-

ly in point. There the landlord wrongfully dispossessed a subtenant, tore down a house belonging to the latter, who claimed $2,000 which he had hidden in a feed box was not returned to him. The landlord was held liable for the money as a direct and necessary consequence of his act.

"The plaintiff was only entitled to recover such damages as were the direct consequences of the acts of the defendants, and those acting under their direction and by their authority. * * * They acted at their peril, and must respond for the consequences. The loss of

160

suming dominion has, for the time at least, taken the place of the owner who normally bears the loss of unexpected happenings.

In decisions which have considered loss by fire where one without right entered the premises of another, it seems to have been universally held that the exercise of care did not affect liability.[7] The language of causation is used but the result of the unlawful use may have been entirely unexpected and unanticipated since no direct proof of the relation of the fire lighted by a trespasser to that which caused the loss, is required.

Under the findings here, defendant will be liable on the basis of negligence alone. The employees smoked upon the set, and saw the condition of the building.[8] Since a trespasser should be held to a higher standard of care than a person lawfully using his own premises it was negligence to leave the building unguarded. Furthermore, defendant violated its own custom of guarding sets under erection when the employees left at night. No contributory negligence was shown. No intervening cause was shown. The defendant's acts were the proximate cause of loss.

In the assessment of damages the court has weighed the cost of replacement of the structure, the deterioration and the rental value of the premises during occupancy together with cost of removal. There was no proof of the value of the equipment. The damages allowed, are in the sum of $2,150.

Findings and judgment may be submitted.

---

the money, although the defendants may not have suspected its presence, was the direct and necessary consequence of the acts of the defendants."

Where dominion or control of a slave was assumed without the knowledge or consent of the owner the wrongdoer was responsible for any consequences which ensued and for damage or loss of the slave ensuing during the continuance of the wrongful act. King v. Shanks, 12 B. Mon. 410, 51 Ky. 410, and other cases relating to slaves cited therein.

[7] Wyant v. Crouse, 127 Mich. 158, 86 N.W. 527, 53 L.R.A. 626; Steger v. Barrett, 58 Tex.Civ.App. 331, 124 S.W. 174; Newsom v. Meyer, 102 Conn. 93, 128 A. 699; Badu v. Satterwhite, Tex.Civ.App., 125 S.W. 929. See Wetzel v. Satterwhite, 59 Tex.Civ.App. 1, 125 S.W. 93.

[8] Smoking does not necessarily cause a fire, but neither does the lighting of a fire in a forge, Wyant v. Crouse, supra; nor in a fireplace, Badu v. Satterwhite, supra; nor in an engine, Steger v. Barrett, supra; nor in a water heater, Newsom v. Meyer, supra. The rationale of the cases apparently is that the entry and use of the premises resulted directly in destruction, since no intervening cause was proven.