## JUNGWORTH v. CHICAGO, M. & ST. P. RY. CO.

The court on appeal from a judgment rendered on a general verdict for defendant must assume, in order to determine the admissibility of evidence received over plaintiff's objection, that the witnesses testified truthfully, and that the conflict in the evidence was resolved in favor of defendant.

An objection by a party to evidence of a conversation with his agent on the ground that the same was not binding on him was sufficient to raise the question of the admissibility of the conversation.

The admission of an agent to bind the principal must be made at the time of doing the act he is authorized to do, and must concern the act either while actually engaged in the transaction or so soon thereafter as to constitute a part of the res gestae, which term has reference to and applies to a condition of affairs, a condition of fact rather than a rule of evidence.

The statement by the agent of an owner of cattle killed by a train made after the accident and after the train had come to a stop, in response to a question as to why he left the cattle on the track, put by the conductor who had not seen the agent until after the accident, was not a part of the act of the agent in protecting the cattle from the train, and was not a spontaneous declaration, and was not admissible as a part of the res gestae.

(Opinion filed, Dec. 1, 1909.)

Appeal from Circuit Court, Davidson County. Hon. FRANK B. SMITH, Judge.

Action by John Jungworth against the Chicago, Milwaukee & St. Paul Railway Company. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

*W. J. Hooper,* for appellant. *Preston & Hannett* and *Chas. E. Vroman,* for respondent.

McCOY, J. In this case the plaintiff, who is the appellant, brought suit against the defendant, Chicago, Milwaukee & St.

Paul Railway Company, alleging the negligent killing, by a train of defendant, of three head of plaintiff's cattle. The defendant answered, denying generally negligence on the part of defendant, and also affirmatively alleging contributory negligence on the part of plaintiff, and also alleging that defendant and its servants used due care in the running and management of its said train of cars, and was cautious and careful in every respect at the time of the alleged injury to plaintiff's cattle. The trial resulted in a general verdict in favor of defendant. On the trial, witness Weiland, for defendant, testified: "I am section foreman. Next day after the accident, I had a conversation with plaintiff, in which he told me that some one had told him that his cattle were out of the pasture and down on the railroad track, and that he had sent his boy on horseback over to get the cattle and drive them home." Witness Chadwick, for defendant, testified: "I was conductor in charge of the train. I heard the stock alarm before reaching the crossing. I went to the rear of the caboose and looked down along the train and saw the engine hit some cattle. The train came to a stop after the cattle were hit. I walked up aside of the train to the point of accident, and observed the injured cattle. I noticed some one there in company with the cattle. I did not learn his name. He was on horseback. I had a conversation with him right away about the time I got there. I remained there from five to ten minutes. This person on horseback was not a boy, but a young man." The conductor was then asked to detail such conversation, to which the plaintiff objected as incompetent, immaterial, and irrelevant, and not binding on plaintiff. The objection was overruled, and to which ruling the plaintiff excepted. The conductor then answered, and further testified: "I asked him why he left the cattle on the crossing, and he said he thought the train would stop." It also appeared from plaintiff's evidence that a son of plaintiff, about 20 years old, saw the cattle on the track, and started on horseback, without the knowledge of plaintiff, to drive the cattle off the crossing, but that the train reached the cattle first, and before the son had time or opportunity to drive them from the track. The ruling of the trial court in permitting the conductor to de-

tail the conversation with the man on horseback is assigned and now urged as error. The jury having found a general verdict in favor of defendant, it must, for the puropse of determining the admissiblity of the conversation in question, be assumed that the witness Wieland and Chadwick testified truthfully; that the conflict in the evidence, for the purposes of this decision, has been resolved in favor of defendant; and that the son on horseback, was plaintiff's agent, authorized to drive the said cattle from off the railway crossing.

It is first contended by respondent that the objection made by plaintiff to the introduction of the conversation in question was not specific enough to raise the error urged, but we are of the opinion that the objection that the same was "not binding on plaintiff," while not so definite as it might have been, is sufficient. This court in La Rue v. St. Anthony & Dak. El. Co., 3 S. D. 637, 54 N. W. 806, laid down the rule with reference to admissions and statements made by an agent, as follows: "The statement or admission of an agent to be admissible in evidence to bind his principal must have been made at the time of doing the act he is authorized to do, and must have been concerning the act he was doing either while actually engaged in the transaction or so soon thereafter as to be in reality a part of the transaction and constitute a part of the res gestae." And, again, in Wheaton v. Insurance Co., 20 S. D. 62, 104 N. W. 850, this court said: "While this court has held that declarations of an agent as to a business transaction which was concluded cannot be given in evidence as against his principal, it has always been careful to discriminate between statements as to transactions which were concluded and those constituting a part of the res gestae." The question to be here determined is whether or not the statements of the boy on horseback brought out by the conversation objected to constitute a part of the res gestae. It seems that the term "res gestae" has reference and applies to a condition of affairs—a condition of fact rather than to any rule of evidence. Wigmore, Ev. §§ 1745-1797. Bearing in mind the gist of the issues framed by the pleadings, viz., the negligent killing of the stock, and in particular plaintiff's alleged contributory negligence,

which it is claimed brought about and culminated in the accident, the conversation in question, between the conductor and the boy, could only relate to the issue of contributory negligence, which defendant claims produced the injury. Was this statement of the boy any part of any act, either of commission or omission, from which the injury arose? Or was this statement of the boy made during the pendency of any act or any part of any act, either of commission or omission, which resulted in producing the accident? Both of these propositions must be answered negatively. At the time this conversation took place, although but a very short time after the accident, it was impossible that the statements of the boy could have been any part of the contributory negligence which produced the injury because at the time the contributory negligence, if any existed, had fully spent itself, and had fully and completely ended with the instant of the accident. At the time of this conversation the contributory negligence, and everything pertaining thereto, was as fully completed and as fully accomplished as if this conversation had taken place a month or year thereafter. It was merely a conversation with reference to a past event. Neither was it spontaneous exclamation. It was the result of interrogation after the happening of the event to which it related. This conversation is made up of one question and the answer. The evidence in this case conclusively shows that this question was asked by a person who had no opportunity to and who did not witness the contributory negligence, or any of the acts or omissions constituting the same, if any such ever existed. The poison in this conversation is in the question, and not in the answer, and therefore not chargeable against plaintiff. The words of the answer, "I thought the train would stop," standing alone by themselves, and not taken in connection with the question, are meaningless, and do not tend to throw light on any question at issue. The question itself could not be considered spontaneous exclamation on the part of the conductor, who uttered the question, because he was not in a position to observe the conduct of the boy previous to the time of the accident. Wigmore, Ev. § 1751. The imputation that the boy on horseback carelessly left the cattle remaining on the

track until the train hit them, as might be inferred from this conversation, did not originate in the fertile brain of the boy, and was no spontaneous exclamation of his. If this conversation had taken place with the engineer, who had the opportunity to see the boy before the cattle were struck, there would be more force in respondent's position, but, having taken place with the conductor, who was at the rear, in the caboose, until after the stock alarm sounded, and who does not claim to have seen the boy until the time of the conversation, it certainly could not have been spontaneous conversation, and most especially so when the poisonous parts of the conversation are contained in the words of the question, and are only chargeable to the boy by way of inference, and not by way of exclamation on his part. Analysis of the conversation in question clearly shows that the same is not within the spontaneous exclamation rule. Hence we conclude that this damaging and poisonous conversation, objected to by plaintiff, not being any part of the act, verbal or otherwise, of the contributory negligence alleged, and not being made during the pendency of any act or omission, or any part thereof, constituting such contributory negligence, and not being spontaneous exclamation, was not binding on plaintiff, because it was no part of anything plaintiff had directed the boy to do, and therefore hearsay; in other words, it was no part of the res gestae.

Mr. Wigmore, in his work on Evidence, seems to have completely analyzed and classified the subject of statements and admissions of agents and employes as to admissibility against the principal with reference to the rules of evidence. "The most difficult field in the application of this principle is that of tortious liability. For example, if A. is an agent to drive a locomotive, and a collision ensues, why may not his admissions, after the collision, acknowledging his carelessness, be received against the employer? Because his statements under such circumstances are not made in performance of any work he was set to do. If he had before the collision been asked by a brakeman whether the train would make a switch at a certain point, and had then mentioned receiving certain instructions from the train dispatcher, this statement might be regarded as made in the course of per-

forming his appointed work. Nevertheless such problems naturally admit of much speculative and barren argument." Again in section 1776: "Since the words are used only as verbal parts of the whole act (contributory negligence on the part of plaintiff) filling out and giving legal significance to the conduct, it is obvious that the words must be contemporaneous with the conduct, or, in the usual phrase, must accompany the act. This requirement does not allow any flexibility or extension of time such as is allowed in using statments under the exception for spontaneous exclamations (section 1749); for the principle is an entirely different one. Here the utterance is used irrespective of its trustworthiness as an assertion and only as a verbal part of an entire act. The utterance must, therefore, exactly accompany the other conduct, for otherwise it is no part of the act, and can serve merely as an ordinary hearsay assertion of what has already been done. It is true that the conduct which the words must accompany may itself extend over a long period of time—as in the case of prescriptive occupation—and therefore an utterance at any moment during that period does in fact accompany the conduct. Nevertheless, even then the utterance is in strictness still contemporaneous with the conduct; and, whenever that conduct has come to an end, any subsequent utterances, however near in time, are inadmissible. Courts are more or less liberal in applying this requirement, and the duration of the main conduct is often over generously interpreted; but no court seems to question in theory the existence of the limitation." Jones in his work on Evidence seems to observe a similar classification. "Declarations of an employe as to who was responsible for an accident, or as to the manner in which it happened, have been held incompetent as against the company, on the ground that his employment did not carry with it authority to make declarations or admissions at a subsequent time as to the manner in which he had performed his duty, and that his declaration did not accompany the act from which the injury arose and was not explanatory of anything in which he was then engaged, but that it was mere narrative of a past occurrence. But there is a class of cases in which the rule that the declaration must be

contemporaneous with the act is construed less strictly; and in which such declarations are admitted, although not technically contemporaneous, if they are spontaneous, and tend to explain the transaction, and if so slight an interval of time has elapsed as to render premeditation improbable.' Jones, Ev. 360. This court, in Fallon v. Rapid City, 17 S. D. 570, 97 N. W. 1009, quoted with approval from Chicago Ry. Co. v. Becker, 128 Ill. 545, 21 N. E. 524: "In an action against a city railroad company to recover damages sustained by one alleged to have been thrown by a conductor from a passing street car, it was held reversible error to allow witnesses to state that the injured boy said immediately after the act complained of and while he was walking from the middle of the street to the opposite side walk. Concerning his declarations the court say: 'They are not concurrrent with the injury, nor uttered contemporaneously with it so as to be regarded as a part of the principal transaction. They were made after the injury was received, and were merely narrative of what had taken place. They were spoken by the deceased as his answer when he was asked 'what was the matter.' The true inquiry, according to all the authorities, is whether the declaration is a verbal act, illustrating, explaining, or interpreting other parts of the transaction of which it is itself a part, or is merely a history, or a part of a history of a completed past affair. In one case it is competent; in the other it is not."

The judgment of the circuit court is reversed, and the cause remanded for a new trial.