PERREAULT, Respondent, v. WISCONSIN GRANITE COM-
PANY, Appellant.

(144 N. W. 110.)

1.   **Trial—Negligence—Instructions—Misleading Instruction.**

In an action for personal injury by a servant, where the court clearly, fully and correctly instructed the jury as to master's duty to furnish servant a reasonably safe place in which to work, the inadvertent use of the term "safe place" in a further instruction is not prejudicial, where no jurymen, in considering the instruction as a whole, could have been misled.

2.   **Appeal—Instructions—Unavailing Exceptions.**

Exceptions to instructions, in an action for personal injury, that "it was the duty of defendant to give plaintiff a safe place in which to work," that "all the obvious dangers he saw and understood he assumed," and "that portion of court's charge in relation to damages which could be recovered by plaintiff in this action," are insufficient to suggest or point out any error in instructions.

3.   **Appeal—Instructions—Harmless Error—Review.**

In a personal injury action, where $1500. was asked for physical suffering and mental anguish arising from the injury, and $490. for financial loss, and the undisputed evidence showed that plaintiff at time of accident was receiving $2.50 per day, and that from October until the next August he was unable to work, **held**, an instruction allowing jury to award a lump sum of $1990., which did not separate the two elements of damages, and did not specifically restrict jury to the amount, in each case, demanded in complant, was harmless error, though improper.

4. **Master and Servant—Injuries to Servant—Contributory Negligence—Evidence.**

In a personal injury action by a servant, evidence held sufficient to support a finding that plaintiff was not guilty of contributory negligence.

5. **Master and Servant—Injuries to Servant—Safe Place to Work—Sufficiency of Evidence.**

Where a quarry company operated two hoists side by side, and from 18 to 20 inches apart, with certain pinions connected with the west hoist, involving cogwork operating between the hoists, held, the evidence warranted jury in finding the place between the hoists not a reasonably safe place for a man to work when the pinions on the west hoist were in motion.

6. **Master and Servant—Injury to Servant—Assumption of Risk—Negligence.**

Ordinarily mere assumption of risk by an employee is not in itself negligence, since a risk may be assumed under the contractual relation between master and servant, where the act is not so rash as to make the servant guilty of negligence.

7. **Master and Servant—Injury to Servant—Assumption of Unusual Risk.**

While the law presumes that the servant assumes all risks ordinarily incident to his employment, yet, in order to defend upon the ground that the servant assumed risk of injury incident to an unsafe place in which to work, the master must show the employee knew of the conditions creating the risk, and comprehended its nature and extent.

8. **Appeal—Exceptions—Instructions.**

An instruction, although not as full and explicit as might have been desired, becomes the law of the case, when not properly excepted to.

9. **Appeal—Incorrect Instruction—Harmless Error.**

In a personal injury action by a servant, an instruction that, when plaintiff undertook the employment and saw the machinery he was to operate, then he assumed all the obvious dangers that he understood, or had the requisite knowledge and experience to understand, while not duly full and explicit, is not prejudicial to the master, being more favorable than one to which he is entitled.

10. **Master and Servant—Injuries to Servant—Assumption and Comprehension of Risk.**

A servant engaged in operating machinery cannot be held, as matter of law, to have assumed the risk of injury from being caught in the meshing cogs of two adjacent hoists, where, while he knew of the pinions in question, it did not appear that he comprehended the risk of working where he might come in contact with the cogs worked by the pinions;

it must be shown that he understood the nature of the risk,
and voluntarily exposed himself to it.

**11.  Master and Servant—Injuries to Servant—Assumption of Risk
—Master's Assumption Thereof.**

Where a master promises to speedily remedy the conditions
of a place in which the servant is to work, the servant does
not assume the risk of injury, as matter of law, by continuing
his employment at the master's request, during a reasonable
time necessary to effect repairs promised by employer, but the
master himself should be held to have assumed such risk,
since he receives the greater benefit from continuance of the
business.

(Opinion filed Sept. 23, 1913.     Rehearing denied Oct. 23, 1913.)

Appeal from Circuit Court, Minnehaha County.  Hon. JOSEPH
W. JONES, Judge.

Action by Urbain S. Perreault against the Wisconsin Granite
Company, to recover for personal injuries as defendant's servant.
From a judgment for plaintiff, and from an order denying a new
trial, defendant appeals.  Affirmed.

*Parliman & Parliman,* for Appellant.

The plaintiff was in the sole control, and management of the
machinery, and the accident was not occasioned by any broken or
defective part of said machinery; the defendant had placed a steel
guard over the cogs, and no person could anticipate that plain-
tiff would back into the machinery and get his foot into the cogs,
from the bottom, when the cog wheel came within six inches of
the floor.

If a machine which is a necessary part of the equipment is un-
safe, because not sufficiently protected to prevent contact with it,
and the employee has full knowledge of its condition, and takes
charge thereof, with the other machinery without objection, and
is injured by coming in contact with the exposed machinery, he
will be held to have assumed the risk of such injury.   Bradford
v. Bee Bldg. Co., (Nebr.) 138 N. W. 734; Gamrat v. Worumbo
Mfg. Co., (Me.) 85 Atl. 569; Mott v. Pacard et al., (Me.) 80
Atl. 279; Budney v. Meddaugh, (Wis.) 138 N. W. 609.

If the servant knows the danger, it is immaterial whether it
is caused by the master's negligence or otherwise.   Jones v. Mil-
waukee Electric Ry. & Lt. Co., (Wis.) 133 N. W. 636; Waxa-
hacie Oil Co. v. McLain, 66 S. W. 266; Nasse v. Adriatic Min-
ing Co., (Minn.) 133 N. W. 479.

The employee assumes the risk of all dangers obviously incident to his employment, whether the employer is negligent or free from negligence, in exposing him to such dangers. Sweeney v. Poppenberger, (Minn.) 133 N. W. 474; Bradburn v. Wabash R. Co., 96 N. W. 929; Ill. C. R. Co. v. Fitzpatrick, 81 N. E. 529; Prescott & S. W. Ry. Co. v. Weldy, 97 S. W. 452.

The principle of assumed risk is independent of the negligence of the employer, or the contributory negligence of the employee. Brauseau v. Kellogg Switch Board & Supply Co., 27 L. R. A. (N. S.) 1052.

If the servant has knowledge of the danger of which he complains, he cannot recover. Regan v. Lombard, (Mass.) 78 N. E. 476; Moylon v. D. S. McDonald Co., (Mass.) 74 N. E. 929, 28 L. R. A. (N. S.) pp. 1215 to 1244 inc.; Elmer v. Mutual S. S. Co., (Minn.) 130 N. W. 1104; Mahar v. Montello Granite Co., 130 N. W. 949; Cooley on Torts, (3d Ed.) 1042.

All that the servant can demand from the master is that he shall not be exposed to dangers unknown to him. Viter Mfg. Co. v. Quirk, 199 Fed. 766; Briley v. Atl. Coast Line R. R. Co., 76 S. E. 231; Commonwealth Steel Co. v. McCash, 184 Fed. 882; 4 Thomp. on Neg., 4615.

Obvious imperfections in methods of machinery, cannot be made the basis of a liability in favor of an employee who suffers injury in the course of his employment. Ragon v. Toledo, A. A. & N. M. R. Co., (Mich.) 56 N. W. 612-613; Choctan O. & G. R. Co. v. Burchard, 86 Pac. 749; Carlson v. Sioux Falls Water Co., 5 S. D. 402; Songstad v. B. C. R. & N. Ry. Co., 5 Dak. 517.

Where the servant assumes the risks of dangers created by the master's negligence which might have been discovered by the exercise of ordinary care on the part of the servant. Note to Scheurer v. Banner Rubber Co., 28 L. R. A. (N. S.) pp. 1223-24-25-26-27-28-29-30; Chicago B. & O. R. Co. v. Shalstrom, 195 Fed. 725.

The servant assumes the risks of those dangers due to the master's negligence which are known to him or which are plainly observable by him. Texas & P. R. Co. v. Archibald, U. S. 42 (L. Ed.) 1188; Note to St. Louis & I. M. So. Ry. v. Birch, 28 L. R. A. (N. S.) p. 1250-51.

The plaintiff testifies that he knew about the key that was in the end of the shaft, then he surely knew about the cogs in which he got his injury.

What was there that the defendant could tell him that he did not know? Keats v. Nat'l. Heeling M. Co., 65 Fed. 940; Goodenow v. Walpole Emery Mills, (Mass.) 15 N. E. 576; Sapienza v. Worden-Allen Co., (Wis.) 138 N. W. 611.

A servant assumes, not only the risks ordinarily incident to his occupation, but such extraordinary risks as he may knowingly and voluntarily encounter. Stimson v. Whitmore, (R. I.) 85 Atl. 113; Smith v. Winona & St. P. Ry. Co., (Minn.) 43 N. W. 968; Vol. 3 LaBatt on Master and Servant, Secs. 1163, 1164, 1165, 1166, 1167, 1168, 1188, 1169, 1171, 1172, 1174, 1176, 1183 1184, 1186, also 1210, 1211, and notes at bottom of pages (2d Ed.); Cannon v. So. Dak. Cen. Ry., (S. D.) 137 N. W. 347.

The question for the jury ceases, when it is established, that the plaintiff acted in a way certain, and the question of whether plaintiff acted with due care is for the court, because it is covered by a specific and concrete rule. IV. Wig. on Ev., Secs. 2552 and 2553.

In order for a servant to recover damages from a master on the ground that the master has been negligent in not furnishing a safe place in which to work, it must appear that the master knew, or ought to have known, of the defect or danger, and that the servant did not know, and had not equal means of knowing such fact, and by the exercise of ordinary care could not have known thereof. Jellico v. J. B. White & Co., (Ga.) 76 S. E. 599; Ludd v. Wilkins, (Ga.) 45 S. E. 429; Holland v. Durham Coal & Coke Co., (Ga.) 63 S. E. 290.

In this case, the testimony of Handley, Olson and Conway shows, that defendant carefully and fully instructed plaintiff in the machines and their operation, and this testimony is not contradicted in the slightest manner by the plaintiff.

Assignment XLV. The court erred in this portion of the instructions, for the reason, there is no evidence upon which to predicate the instruction. In his complaint the plaintiff alleges damages in the sum of $1500 for his pain and suffering and for loss of time from his work in the sum of $490. There is no evidence in the case what wages or pay plaintiff has received for his work

since his injury. Neither is there any evidence in the case of the amount of time the plaintiff lost by reason of the injury. Plaintiff can recover $1500 and no more for his pain and suffering and for his lost time not to exceed $490. In other words the claim for damages and for lost time are separate and distinct and are not interchangeable. 6 Thomp. on Neg. 7291; Kane v. Metropolitan St. R. Co., 88 N. Y. Supp. 162; 6 Thomp. on Neg., (White Supp.) S. 7291.

The employer should furnish the employee with a safe place in which to work; this being a rule of the common law, and it is also provided by statute in most of the states. Nadau v. White River Lumber Co., 43 N. W. 1134.

Leaving the cogs of a horse-power threshing machine uncovered, so that an employee is injured in attempting to oil the machine, is negligence entitling the person injured to recover. Mastin v. Levagood, (Kan.) 27 Pac. 122. We cite to this general proposition: Buehner v. Creamery Package Mfg. Co., 100 N. W. 345, 104 Am. St. Rep. 354; Williams v. Ballard Lbr. Co., (Wash.) 83 Pac. Rep. 323; Baltimore & O. S. W. Ry. v. Cavanaugh, (Ind.) 71 N. E. 240; C. C. C. & St. L. R. R. v. Osterling, (Ind.) 100 N. E. 856; Bessler v. Laughlin, (Ind.) 79 N. E. 1033; Himrod Coal Co. v. Clark, (Ill.) 64 N. E. 282; Miller v. Inman, Poulson & Co., 66 Pac. Rep. 713; Herbert v. Northern Pacific Railway Co., (Dak.) 13 N. W. 349.

A master is bound to furnish his servant a safe place in which to work. Stewart v. Phil. W. & B. R. R., (Del.) 17 Atl. 639; Penn Co. v. Whitcomb, (Ind.) 12 N. E. 380; Swaboda v. Ward, 40 Mich. 420.

A place to work that is so dangerous that a moment's forgetfulness, or any slip or accident on the part of the servant, results in personal injury, is not a safe place in which to work. Nadau v. White River Lbr. Co., 43 N. W. 1134; Buehner v. Creamery Pkg. Co., 100 N. W. 345.

Even supposing there was some conflict of testimony, it then passes out of the hands of the court, and becomes a question for the jury; where there is a conflict of testimony, and the matter has been considered by the jury, under proper instructions of the court, the finding of the jury will not be disturbed. Peever

Merc. Co. v. State, etc., Co., (S. D.) 119 N. W. 1008; Durand
v. Preston, (S. D.) 128 N. W. 129.

It is undisputed that appellant had notice of the fact that
this machinery was defective, and that by reason of the change
in the gears on the West machine, it caused the machine to
operate in a way that it was never intended, and as a consequence
the gears in which respondent was injured then became dangerous
by reason of their unguarded condition.

Whether respondent assumed the risks incident to his em-
ployment, understanding and appreciating them, is a question
of fact for the jury to decide. As to whether or not the plaintiff,
Perrault, understood and appreciated the risks incident to his
employment is a question for jury. Woutilla v. Duluth Lbr. Co.,
33 N. W. 551; Galloway v. Agar Packing Co., 129 Iowa, 104 N.
W. 721; Scharenbroich v. St. Cloud Fiber Ware Co., 116 Minn.
121, 60 N. W. 1093; Rase v. Minneapolis, St. P. & S. S. M. Ry.,
120 N. W. 360; Zonkey v. People's Union Merc. Co., (Mo.)
86 S. W. 486.

Where the answer sets up a plea of assumption of the risk,
the burden of proof of such assumption is upon the defendant.
Sheback v. National Cracker Co., (Iowa) 94 N. W. 930.

Where an employee makes a complaint to the master, or some
one in authority, of the dangerous character of the machinery
about which he is employed, and is assured that it will be
remedied, and in reliance upon that issurance he remains in the
employ, this removes the question of the assumption of the risk.
Fouts v. Swift & Co., (Mo.) 88 S. W. 167; Prenate v. Union
Iron Co., (N. Y.) 23 Hun. 528; Burch v. Southern Pacific Ry.,
140 Fed. 270; Dowd v. Erie Ry. Co., (N. J.) 57 Atl. 248; Pawnee
Coal Co. v. Royce, 79 Ill. App. 469.

WHITING, P. J.    Plaintiff brought this action seeking to
recover damages for an injury which he claimed to have suffered
through the negligence of defendant while he was defendant's em-
ployee. Defendant denied that it had been guilty of negligence,
and alleged that plaintiff's injury resulted from the negligence of
plaintiff, and, further, that plaintiff had voluntarily assumed the
risks attendant upon the condition under which he was working
at the time he was injured. Verdict and judgment were for plain-
tiff, and, a motion for new trial having been denied, defendant

appealed to this court from the judgment and order denying a new trial.

Defendant has presented numerous assignments of error, the majority based upon rulings of the court in the admission and rejection of evidence, but some based upon the refusal of the court to direct a verdict for defendant—the alleged insufficiency of the evidence to support the verdict—and alleged errors of the court in its instructions to the jury. We have read carefully the record herein, and considered the several rulings of the court relating to the receipt of evidence, and it is clear to us that there was no prejudicial error in any of said rulings, and no important question of practice involved therein, therefore the same will receive no further attention at our hands.

The exceptions to instructions were as follows: "The defendant excepts to the following portions of the court's charge to the jury: (1) Wherein the court charges the jury it was the duty of the defendant to give the plaintiff a safe place to work in. (2) That it was the duty of the defendant to give the operator a reasonably safe place in which to work. (3) That all the obvious dangers he saw and understood he assumed. (4) That portion of the court's charge in relation to damages which could be recovered by the plaintiff in this action."

[1] As to the first exception, it is true that, after giving full and comprehensive instructions on the points submitted to the jury for its consideration, including a full, clear, and correct instruction as to the duty of the defendant to furnish a "reasonably safe place" for the plaintiff to work in, the court, in a brief resume of the points covered by its instructions, did inadvertently use the term "safe place" instead of "reasonably safe place"; but no juryman, in considering the instructions as a whole, could have been misled thereby.

[2] The other execptions are clearly insufficient to suggest or point out any error in any instruction. In what manner would these exceptions aid the trial court in discovering the errors, if any, in its instructions? 38 Cyc. 1796-1803.

[3] Furthermore, we are of the opinion that the instructions given were as favorable to the defendant as any it was entitled to, unless it were an instruction of the court wherein it directed the jury as to the amount of verdict which it might find in favor of

the plaintiff, but did not call the attention of the jury to the fact that two elements of damages had been pleaded, and that, under the law, it could not find for the plaintiff on either one of these elements in an amount in excess of the amount asked for thereon in the complaint. The complaint asked. for $1,500 for the physical suffering and mental anguish arising from the injury, and $490 for the financial loss occurring through inability of plaintiff to work after receiving such injury. The point made by appellant is that, so far as the damage from loss of time and labor was concerned, there was no evidence whatsoever that would support a verdict in the sum of $490, or in any other sum, and that the instruction as given authorized the jury to bring in a verdict for $1,990, upon an element for which only $1,500 was asked. While it would have been better for the trial court to have called the attention of the jury to the two elements of damage pleaded and to the limit in the amount which they could find as to each, yet the error was without prejudice, because the evidence is undisputed that, at the time of the injury, to-wit, in October, plaintiff was earning $2.50 a day, and that from then until the next August he was unable to walk, from which fact the jury was certainly warranted in finding a verdict for $490 for loss of time and wages.

[4] Before considering the other questions presented, it is well to note the facts revealed by the evidence. Defendant is a corporation engaged in the quarrying of stone near Sioux Falls. In the operation of its quarries it uses two electric hoists situated in a building on its premises; these hoists, through the medium of wire cables, operating two derricks used in moving the quarried stone. It was the duty of the person in charge of the hoists to operate the same in accordance with signals received from other employees at or near the derricks. These hoists are identical in construction, and were placed side by side, facing the south, and with a space of from 18 to 20 inches between them. The cables running to the derricks passed over and around drums on the hoists. The east hoist was used to run a derrick which had in connection therewith a turntable. In operating this derrick and turntable two different drums on said hoist were used; the front or south one being the drum used in running the turntable. To communicate motion to the forward drum, there was a series of

four cogwheeels or pinions placed on the shaft of the rear drum, another on the shaft of the forward drum, and, between these, two so placed as to communicate the motion from the rear pinion to the pinion on the shaft of the forward drum. The levers by which each of these hoists was controlled were situated upon the west side of the hoist, being the side opposite from that upon which the pinions belonged. Inasmuch as the west hoist was not used to operate a turntable, there was no need for the front drum thereon to revolve, and, at the time plaintiff commenced to work for defendant, the pinion which, in order to communicate motion to the forward drum of said hoist, must needs be placed next to and so as to mesh with the pinion on the shaft of the rear drum of said hoist was not in place on such hoist. It will thus be seen that, while there were three pinions upon the west hoist, the two forward ones did not revolve when that hoist was operating, leaving moving only the one on the rear drumshaft. To protect from the danger of these pinions when in motion, there was placed a steel guard or protection upon each hoist, which guard extended over the space occupied by all four cogwheels and sufficiently guarded the same from above. In view of the fact that the levers where the operator would stand were at the opposite side of each hoist from the pinions, and the pinions were properly protected from above, either one of these hoists, if standing by itself, was clearly a proper and reasonably safe machine, and the placing of them side by side was proper, so long as the set of pinions on the west hoist were not in motion. It apears that defendant advertised for a man to run these hoists, and that plaintiff applied for the position; that at that time defendant had a party running said hoists, and put the plaintiff under the direction and supervision of such party for a few days, and until the plaintiff felt satisfied that he was competent to run the same; that then the plaintiff was placed in sole charge of these hoists; that a few days afterwards a casting was broken upon the east hoist, the want of which casting prevented the running of the forward drum on said hoist. It was then suggested, and probably by the plaintiff himself, that by transferring the cable from that drum onto the front drum of the west hoist, and by placing upon such hoist the pinion necessary to communicate motion from the shaft of the rear drum to the pinion upon the shaft of the front drum, the

west hoist could not only do its former work but could also run the turntable theretofore run from the east hoist. The defendant acted upon this suggestion, and thereafter and until the time of the accident the forward drum of the west hoist was used to run said turntable. It will be seen that, by this change, there was set in motion the series of pinions on the west hoist, which pinions were along the side of the narrow passage between the west hoist and the east hoist, upon the opposite side of which passage were the levers which were used by plaintiff in the operation of the east hoist, thus rendering it necessary for him to pass along by, and stand near to, this set of revolving pinions. It was while engaged in his duties in connection with the east hoist, and while he was in the act of turning to attend to the oiling of certain machinery under his charge and at the same time watching for signals, that plaintiff turned to the left, and, stepping backward with his left foot, brought the heel of same under and in contact with the second and third pinions on the west hoist, which said pinions in turning meshed upward the one with the other and at a distance of some six or eight inches from the floor. His heel, or leg immediately above same, was drawn into the cogs, and he was severely injured. There is no evidence that, after the west hoist was fixed so as to operate the turntable, the plaintiff ever made any complaint to his superiors in relation to any risk connected with the changed conditions. There is no direct testimony that he realized or understood that there was any risk of injury from the situation of such wheels and their proximity to the other hoist. It does appear that he complained to a co-worker that a certain key which held one of the pinions upon its shaft stuck out from the end of the said shaft, and was dangerous. There is evidence that, when the change was made so as to use the west hoist in running the turntable, he was assured that the necessary casting to fix the east hoist would be procured, and was directed to go ahead with his work.

Under the instructions given, the jury must have found, and it certainly was fully justified in finding, that the plaintiff was not negligent, and that the defendant was negligent. The place where plaintiff was called upon to work after the change was not a place where danger was so imminent as to make it rash or

negligent for one to work therein, especially in view of the fact that the former conditions were to be soon restored.

[5] While each hoist, for reasons above noted, would be reasonably safe if standing by itself, and the two standing close together were reasonably safe when operated as at first, yet the evidence fully warranted the jury in holding that the place between these hoists was not a reasonably safe place for a man to work when the full set of pinions on the west hoist was in motion. Nadau v. White River L. Co., 76 Wis. 120, 43 N. W. 1135, 20 Am. St. Rep. 29; Buehner v. Creamery, etc., Mfg. Co., 124 Iowa, 445, 100 N. W. 345, 104 Am. St. Rep. 354.

[6] The only question left for the determination of the jury was whether or not plaintiff, when he continued to work with these pinions on the west hoist in motion, assumed the risk of injury therefrom. It must be borne in mind that there is a wide distinction between "asumption of risk" and "negligence." While in assuming the risk, where danger is so imminent as to make such assumption a rash act, one may be guilty of negligence, and while, upon the other hand, one who has not assumed a risk may yet suffer an injury for which he cannot recover damage, owing to negligence upon his part contributing to the injury, yet ordinarily mere assumption of a risk is not in itself negligence.

[7] While the law presumes that an employee assumes all the ordinary risks incident to his employment, including those connected with the use of proper machinery when properly located, and therefore no proof of assumption of risk in such cases need be pleaded or proven, yet when the risk is out of the ordinary, as when an employer has failed to furnish a reasonably safe place in which his employee shall work, then, if such employer seeks to defend an action based upon an injury received owing to his own negligence in not furnishing such a proper place, and seeks to defend upon the ground that the employee assumed the risk, there being no presumption that such risk was assumed, it becomes a matter of affirmative defense to be alleged and proven by such employer. In Nadau v. White River L. Co., supra, the court says: "The learned counsel for the defendant also contend that the presumption is that the plaintiff assumed all the dangers incident to his employment, and therefore the burden of proof was upon him to show that he did not know of the danger

connected with this uncovered gear. We think in this the learned counsel are in error. The employee is only presumed to assume the dangers usually attendant upon his employment, and, when he shows that he has been injured by a cause or danger not usually or reasonably attendant upon his employment, he is then entitled to recover, unless it be shown that he knew of such unusual and unreasonable danger, and fully comprehended its nature, at the time of his employment or before the accident happened. The evidence in this case having established the fact that the injury to the plaintiff was caused by a danger which ought not to have attended his employment, and would not have attended it, if the defendant had performed its whole duty towards him, there is no presumption that the plaintiff assumed the unusual risk, and the burden of proof is on the defendant to show affirmatively that he did, to the same extent that it is on the defendant to show any other contributory negligence on the part of the plaintiff. The assumption of an unusual risk in any employment by the employee is in the nature of negligence on his part, which, like any other contributory negligence, prevents his recovery.

[8, 9] What is inecessary to show in order to establish the assumption of an extraordinary risk? (1) That the employe knew of the conditions creating the risk. (2) That he comprehended the nature and extent of the risk. Upon this feature of the case, the court instructed the jury as follows: "Further, when the plaintiff undertook the employment there, saw the machinery that he was to operate, then all the obvious dangers that he understood and appreciated he would be supposed in law to assume. Or if he had the requisite knowledge of machinery, and experience to understand and did understand all the dangers incident to the machinery he was operating, if he appreciated those dangers, then he would be presumed to take his wages and the employment with an assumption of the risk that went with it, the ordinary risks that went with it." While this instruction was not as full and explicit as might have been desired, in the absence of a proper exception, it became the law of this case, and was more favorable to the defendant than would have been an instruction more specially calling attention to the facts to be considered by the jury.

[10]   Defendant contends that the conditions were so patent and the danger and extent thereof so clear that the court should have directed the jury that plaintiff assumed the risk and not submitted it to the jury.   In this we think defendant in error.   While it is true that plaintiff mentioned the fact that after the change it was an unsafe place to work, yet the evidence did not show but that he had in mind the key protruding from one of the pinions. There is no evidence that he ever thought of there being any danger from the meshing of the pinions.   There was evidence that, prior to going to work for appellant—which was less than a month before the accident—respondent had never worked about machinery similar to these hoists, and the jury may well have found that, while he knew of these pinions and of the movement of same, he may never have thought of or comprehended the risk attendant upon working where he might come in contact with the meshing cogs.   This was clearly a question for the jury, and we cannot disturb its decision.   In Pennsylvania Coal Co. v. Kelly, 54 Ill. App. 626, it was said:   "A servant is chargeable with notice of what is apparent, but not necessarily that the apparent is dangerous."   In Bagley v. Wonderland Co., 205 Mass. 238, 91 N. E. 317, the court said:   "The workman can be barred of recovery for injuries resulting from perils arising during the course of employment only when he realizes their nature and extent with full comprehension of the danger, and continues in the service with the added exposure voluntarily and intelligently.   The mere fact that a servant knows the defects does not necessarily charge him with contributory negligence, or the assumption of risks growing out of those defects.   The question is, Did he know, or ought he, in the exercise of ordinary common sense and prudence, to have known, the risks to which the condition of the instrumentalities exposed him?"   Wuotilla v. Duluth Lumber Co., 37 Minn. 153, 33 N. W. 551, 5 Am. St. Rep. 832.   Sections 1179 and 1186, Labatt's Master and Servant (2d Ed.), and especially section 1190, where the learned author says:   "To bring a case within the scope of the doctrine now under discussion, it must be shown that the servant possessed a sufficiently exact appreciation of the nature and extent of the danger in question to enable him to estimate the possibilities of his environment in so far as they affected his bodily safety.   The absence of that appreciation is logically incom-

patible with the hypothesis that, in undertaking or continuing in the employment, he exercised that intelligent and deliberate consent which is one of the essential elements involved in the conception of an assumption of a risk." The fact that plaintiff may have fully compdehended the risk incident to the protruding key is no bar to his recovery for an injury resulting from getting caught in the meshing cogs of the pinion.

[11] The question of whether respondent, in view of the promise to repair the east hoist and the direction to him to continue his work, could have been held to have assumed the risk, even if he fully comprehended same, was not submitted to the jury. Labatt, in his great work at section 1196, after announcing the proposition "that a servant does not necessarily become chargeable with contributory negligence because he does not leave the employment immediately after he ascertains the existence of a dangerous defect," says: "That equity and common sense point very decidedly to the propriety of admitting the operation of a similar principle where the defense of an assumption of the risk is relied upon seems to be unquestionable." In Greene v. Minneapolis, etc., Ry. Co., 31 Minn. 248, 17 N. W. 378, 47 Am. Rep. 785, it was said: "If the emergencies of a master's business require him temporarily to use defective machinery, we fail to see what right he has in law or natural justice to insist that it shall be done at the risk of the servant and not his own, when, notwithstanding the servant's objection to the condition of the machinery, he has requested or induced him to continue its use, under a promise thereafter to repair it." The same rule should hold when any complaint is forestalled by the promise to repair, so that if the jury had found that plaintiff fully comprehended the risks incident to working near the moving pinion, yet it need not follow that they should have found for defendant. It is the master who will receive the greater benefit from the continuation of his business, and, when his employee continues to work at his request, the master, rather than the employee, should be held to have assumed the risk.

In closing we cannot but quote with approval the following, found in section 964 of Labatt's great work, which we deem not only applicable to the facts of this case, but as announcing a doc-

trine that should be accepted as fundamental in the relations of master and servant: "If the degree of care which the servant must exercise in order to escape injury is greater than that which, considering the exigencies of the work, and other matters which are likely to divert his attention and produce a temporary forgetfulness of a known danger, it is reasonable to demand from men of average prudence and average powers of observation, then it may be fairly maintained that the master ought to bear the responsibility of any accident which may occur, quite irrespective of the question whether the servant was or was not aware of the nature and extent of the danger. The acceptance of this principle would not involve any very startling changes in the law as we now have it. It would merely require us to fix the standard of care incumbent on the master, with a view to the consideration that, as the implied agreement of the servant is merely that he will use ordinary diligence in the discharge of his functions, it is a breach of duty in the master to keep his instrumentalities in such a condition that ordinary diligence will not always save the servant from injury. A rule formulated upon this basis would not make the master an insurer, nor would it necessarily render him liable simply for the reason that his appliances were old and imperfect. It would merely make his liability dependent upon whether he had or had not acted unreasonably, and, therefore, negligently, in holding out inducements to do work which, at certain conjunctures not unlikely to arise, could not be performed safely without the exercise of a degree of care which no fair-minded, considerate person would demand from a servant. Such a rule would not impose any burden upon the employer which a just and sensible man would be unwilling to bear, and would effectually prevent that cruel abuse of the doctrine of assumption of risks, which has done so much to embitter the feeling with which capitalists are regarded by the working classes."

The judgment and order appealed from are affirmed.