HJERMSTAD, Appellant, v. PETROLEUM CARRIERS,
Inc. et al., Respondents

(53 N. W.2d 839)

(File No. 9279. Opinion filed June 12, 1952)

Roy E. Willy, Sioux Falls, for Plaintiff and Appellant.
Bailey, Voorhees, Woods & Fuller, Sioux Falls, Stover & Beardsley, Watertown, for Defendants and Respondents.

RUDOLPH, J.   Plaintiff brought this action to recover damages resulting from a fire which it is alleged the defendant, Trenholm, negligently caused.   The trial court submitted the case to a jury and the jury returned a verdict in favor of the defendants.   The plaintiff has appealed.

The assignments of error present three questions. First, the sufficiency of the evidence to sustain the verdict, second, the ruling of the trial court on the exclusion of evidence, and third, the propriety of certain instructions given by the trial

court. We have concluded that all three questions must be ruled adversely to appellant.

The facts are substantially as follows: The plaintiff was engaged in the gasoline and oil business in the town of Wallace. The defendant, Petroleum Carriers, Inc., is engaged in the business of transporting gasoline from a pipe-line outlet to the retailers. The defendant, Trenholm, is an employee of Petroleum Carriers and a driver of a gasoline transport. Trenholm operated his truck out of Watertown. On the evening of the 19th of July, Trenholm received an order from the Petroleum Carriers office at Watertown to deliver a load of gasoline to plaintiff's tanks at Wallace. This order was marked "rush". The order had been placed with the Barber Company of Minneapolis, a dealer in gasoline, and sent by the Barber Company to the Petroleum Carriers for the purpose of having the gasoline delivered. Petroleum Carriers was not engaged in the business of selling gasoline but simply acted as a carrier. On the morning of July 20th, Trenholm reported to the pipe-line outlet about 5:30 A. M. and received a load of gasoline under the order which was given him the evening before for deliverry at Wallace. Trenholm arrived with his load at Wallace at about 7:00 o'clock in the morning. There was no one present at plaintiff's station at the time and Trenholm proceeded to do those things necessary to unload the gasoline from his truck into plaintiff's tanks. Trenholm testified that he had been instructed by the manager of plaintiff's station that if he arrived with a load of gasoline in the morning before anyone was around to proceed to unload, upon which advice or instructions he had acted several times in the past. While making the connection on the top of the tank which was to be filled, Trenholm looked into the tank through an outlet to permit the escape of air and observed gasoline in the tank. This tank capacity was 16,000 gallons and the capacity of the truck and the load which was to go into the tank was 4,000 gallons. Trenholm did not measure the amount of gasoline in plaintiff's tank. After making all of the necessary connections, Trenholm went into a small building known in the evidence as a pump house and by throwing an electric switch started the pump which pumped the gasoline

from the truck into the tank. Normally it would take about an hour to unload the truck. Trenholm then got into the cab of his truck and stayed there four or five minutes after which he walked to the back of the transport and then saw Mr. Stanislaus, plaintiff's manager, approaching from the filling station which was a short distance away. Trenholm testified that as Stanislaus approached he said: "I see you brought us another load of gas". The two visited momentarily and then Trenholm climbed on top of the transport and looked in each of three compartments being unloaded. As he was looking in the last compartment gasoline started overflowing from the tank and spraying toward the truck and toward the pump house. Trenholm jumped down from the truck and started to close the valves which controlled the flow of gasoline into the tank. Stanislaus started running for the pump house and after he was inside an explosion occurred which ignited the gasoline and started the fire which destroyed the property of the plaintiff. According to the testimony the original flash or explosion was at the pump house or in its vicinity. Trenholm testified he saw Stanislaus coming out of the door of the pump house, that he was faced out, not backing out and that his clothing was afire. In the meantime another of plaintiff's employees had come on to the scene, a man by the name of Haugen. The three men immediately started running away from the fire and after getting a safe distance Stanislaus was placed in a small pool of mud or water by Haugen and the flames extinguished. No one of the three men was smoking. The switch in the pump house is a three-blade open-knife type switch with no cover over it. It appears from the testimony that when such a switch is opened or broken while it is operating the motor an arc or a spark occurs which will ignite inflammable fumes if it comes in contact with such fumes. Following the time when the flames on Stanislaus were extinguished Trenholm and Haugen became engaged in other activities in connection with the fire. Stanislaus apparently walked across the street from the fire where he met his wife and there was some discussion about his jacket in which there was money belonging to the station. Thereafter and within three or four minutes Mr. and Mrs. Stanislaus got

in a car and were driven to Webster where Stanislaus was placed in a hospital. Stanislaus died nine days following the fire. This statement of the facts is sufficient for our present purposes. Other facts will appear in the discussion of the issues.

By its instruction No. 6 the trial court advised the jury that gasoline is a dangerous substance and that a person handling it should use care commensurate with the danger. The jury was further instructed that in the absence of plaintiff's attendants it was the duty of Trenholm to ascertain the amount of gasoline necessary to fill the tank and to see that the tank did not overflow, and to remain by his truck so that he could immediately shut off the flow of gas if anything happened to make such action necessary. We may concede, as contended by appellant, that acting under this instruction the jury had no alternative, that the undisputed evidence considered with this instruction determined Trenholm was negligent.

The court next instructed the jury that it was the duty of Mr. Stanislaus "to use the care and caution which an ordinarily prudent person would have used and exercised under the same circumstances and conditions, and if Mr. Stanislaus in going or attempting to go into the pump house to pull the switch to stop the motor when the gas was being sprayed about from the overflowing Tydol tank, failed to use and exercise that degree of care which an ordinarily prudent person would have used and exercised under the same circumstances and conditions, he was negligent; * * *".

Appellant objected to this instruction for the reason that the evidence failed to show that any act on the part of Stanislaus which "in any way contributed or caused or was responsible for the fire and explosion." The question presented is whether the evidence is sufficient to sustain a finding by the jury that Mr. Stanislaus dashed into the pump house, pulled the switch and caused the spark which ignited the gasoline, and if he did so whether such act is a proper basis for a finding of negligence. True, no one saw Mr. Stanislaus pull the switch, but the evidence is ample upon which the jury might base the inference that he accomplished his mission in going to the pump house and that

he did actually pull the switch. There is no other explanation in the evidence for the igniton of the gasoline. The evidence is undisputed that breaking this switch would cause a spark sufficient to ignite the gasoline and fumes present on this occasion. The time element is such that the inference the switch was pulled is almost irrestible. The flash and fire occurred seconds after the entry of Mr. Stanislaus into the pump house. When he came out of the pump house he was afire. The flash of the explosion was first observed in the vicinity of the pump house. The origin of a fire may be established by circumstantial evidence, the limitation being that the circumstances must be such as will produce conviction to a reasonable certainty on an unprejudiced mind. Meier & Lockwood Corp. v. Dakota Live Stock & Inv. Co., 46 S. D. 397, 193 N.W. 138. The facts recited above are ample to meet the test of the cited case.

▐█ Whether going into the pump house through this spraying gasoline and pulling the switch was negligence, we believe is a question upon which reasonable minds might differ. The issue of the negligence of Mr. Stanislaus was, therefore, a question for the jury, and the jury's decision on this issue is binding on the court.

█ Appellant further contends that the evidence establishes as a matter of law that the negligence of Trenholm was the sole proximate cause of the fire. Proximate cause is the immediate cause; it is the natural and continuing sequence unbroken by any intervening cause, preceding the occurrence and without which it would not have happened. De Gooyer v. Harkness, 70 S. D. 26, 13 N.W.2d 815. We are unable to say as a matter of law that the negligence of Mr. Stanislaus, as determined by the jury, was not a cause intervening between the overflow of the gasoline and the fire. It is entirely possible that had not Mr. Stanislaus thrown the switch and caused the spark which ignited the gasoline, no fire would have resulted from the overflowing gasoline. Froke v. Watertown Gas Co., 68 S. D. 69, 298 N. W. 450. The jury by its verdict determined that the proximate cause of the fire was the negligence of Mr. Stanislaus. Whether the negligence of Mr. Stanislaus was the sole proximate cause of the fire is not material because in any event

it was a concurring cause, and this court has held that when an injury occurs through the concurrent negligence of two persons, and would not have happened in the absence of either the negligence of both is the proximate cause of the injury. Krumvieda v. Hammond, 71 S. D. 544, 27 N.W.2d 583.

■ At the trial appellant offered to prove that Mr. Stanislaus on the trip to Webster and while he was in the hospital made certain statements to his wife, daughter and son-in-law relating to the fire and its occurrence which disputed some of the evidence given by Mr. Trenholm. It appears from a deposition given by Mrs. Stanislaus that the statements made to her were in response to her inquiries. The trial court refused this offered testimony, and this refusal is assigned as error. It is contended that these statements were spontaneous exclamations, and as such outside the scope of the hearsay rule, or within an exception thereto. The rule regarding the admission of spontaneous exclamations is stated in Wigmore on Evidence, Third Edition, Sec. 1747, as follows:

"This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness) and thus as expressing the the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts."

This court has held in substantial accord with the above rule. Fallon v. Rapid City, 17 S. D. 570, 97 N.W. 1009; Stratton v. Sioux Falls Traction System, 55 S. D. 464, 226 N.W. 644.

414

■■ In reviewing the trial court's ruling on the admission of this type of testimony, this court defers to the determination of the trial court of the preliminary facts bearing upon the propriety of receiving the testimony. Chiles v. Rohl, 47 S. D. 580, 201 N.W. 154. As disclosed by the many cases cited in Wigmore, Sec. 1750, this South Dakota holding is in accord with holdings generally. Wigmore goes so far as to suggest that the application of the principle should be left "absolutely to the **determination of the trial Court**". However, giving the ruling of the trial court the deference to which we believe .it entitled under the cited case we cannot hold that the offered testimony should have been admitted. Mr. Stanislaus had left the scene of the fire. In the interval between the explosion and the time of making the statements ·in the car he had been concerned apparently normally with the money in the jacket which he had shed following the fire. The statements in the hosptial were made at least some hours after the fire, and the statements made to Mrs. Stanislaus were in response to inquiries by her. On the way to the hosptial it appears that Mr. Stanislaus was concerned with the speed of the car and asked the driver to go slower. Other factors relevant to the admission of this testimony, no doubt, appealed to the trial court but the above is sufficient we believe to disclose our reason for holding that the action of the court in excluding the testimony was not unreasonable. Whether this offered testimony was spontaneous within the meaning of the principle above set out, or whether it was "merely a conversation with reference to a past event", Jungworth v. Chicago, M. & St. P. Ry. Co., 24 S. D. 342, 123 .N.W. 695, 696, .was, under this record, for determination by the trial court.

■■ We have considered appellant's objections to the instructions. We have read with care the trial court's instructions to the jury and have concluded they fairly submitted the issues presented by the evidence. If anything the instructions unduly limited the claims of respondent with regard to acts of negligence by the plaintiff, but of this appellant cannot complain. Appellant complains because the court in stating the claims of each party included claims

upon which there was no dispute in the evidence. However, these instructions were simply preliminary and gave to the jury the claims of each party. The subsequent instructions made clear the real issues for the jury's decision and we are convinced appellant was not prejudiced by this preliminary statement of the claims.

The judgment appealed from is affirmed.

All the Judges concur.