SCHMELING, Appellant v. JORGENSEN, Respondent

(84 N.W.2d 558)

(File No. 9605.   Opinion filed August 2, 1957)

**William M. Rensch,** Rapid City, for Plaintiff-Appellant.

**Whiting, Lynn & Freiberg,** Rapid City, for Defendant-Respondent.

SMITH, P. J.  The complaint alleges that defendant and his employees negligently and carelessly caused a steel girder of great weight to fall upon plaintiff to his injury. The trial resulted in a directed verdict for defendant.  Thereafter plaintiff made a motion for a new trial which was denied.  Plaintiff has appealed.

At the time in question plaintiff was engaged in the business of selling steel quonset buildings.  He had sold such a building to one Victor Karrels to be erected on his ranch

near Sturgis, South Dakota. The contract was assigned to Rapid City Steel Structures. That company poured the concrete floor and approachway and let the contract for erecting the steel structure thereon to defendant.

On December 13, 1954 plaintiff drove to the Karrels ranch in the hope that some person interested in purchasing a like building had revealed their interest to Karrels or to defendant's crew. When he arrived he found defendant and his four employees had assembled the steel frame of an end wall on the ground just outside the end of the concrete floor and were about to lift it into an upright position.

Plaintiff was acquainted with defendant and two of his men, and immediately engaged them in conversation. After quite a bit of talking and joking defendant said in substance that if plaintiff would use a little of his wind as pressure and help raise the end wall it would be appreciated. In response to that request plaintiff undertook to assist in raising the wall. For the present it is sufficient to state that as they were lifting the wall toward an upright position something went wrong and it fell to the ground. It fell on plaintiff and he was severely injured.

At the close of plaintiff's evidence defendant made a motion for a directed verdict in which he specified several separate grounds of insufficiency of the evidence. In granting the motion, the trial court failed to indicate the specific ground or grounds upon which it based its ruling. Under a proper assignment we shall separately consider the specifications urged by defendant in his motion.

It was specified by defendant that the only inference warranted from plaintiff's evidence is that his exclusive remedy is under the Workmen's Compensation Law and hence the trial court was without jurisdiction.

■ As defined by SDC 64.0102 of the Workmen's Compensation Law an "employer" includes an individual using the services of another **for pay** and an "employee" includes a person in the services of another under a contract of employment, express or implied. It is settled that only those who render services for pay under a contract express or implied can gain a remedy under that law; those who

serve gratuitously are excluded from its purview. Schumacher v. Schumacher, 67 S.D. 46, 288 N.W. 796. By SDS 64.0104 it is provided that the rights and remedies granted to an employee by that law, on account of personal injury or death by accident arising out of and in the course of employment, shall exclude all other rights or remedies on account of such injury.

Reasoning from this background it is the theory of the defendant that the evidence establishes as a matter of law that plaintiff was serving him for pay under an implied contract when the accident occurred and hence that his exclusive remedy is under the Workmen's Compensation Law. Whether it can be said as a matter of law that plaintiff was so serving is the proposition on which the parties divide. Plaintiff contends the evidence will support a finding that both parties understood plaintiff was rendering a gratuitous service as a favor. We are persuaded that the plaintiff's contention must be sustained.

The controlling principle was well formulated by the Massachusetts court in Pew v. First National Bank, 130 Mass. 391, at page 395, as follows: "* * * But, in any case, the mere fact that valuable services are rendered for the benefit of a party does not make him liable upon an implied promise to pay for them. It often happens that persons render services for others which all parties understand to be gratuitous. * * * In such cases, however valuable the services may be, the law does not raise an implied contract to pay by the party who receives the benefit of them. To render such party liable as a debtor under an implied promise, it must be shown, not only that the services were valuable, but also that they were rendered under such circumstances as to raise the fair presumption that the parties intended and understood that they were to be paid for; or, at least, that the circumstances were such that a reasonable man in the same situation with the person who receives and is benefited by them would and ought to understand that compensation was to be paid for them." Cf. Fitzgerald & Mallory Const. Co. v. Fitzgerald, 137 U.S. 98, at page 111, 11 S.Ct. 36, 34 L.Ed. 608.

Elsewhere it is written, "* * * The common illustration of this principle is where performance of work or services is requested. If the request is for performance as a favor, no offer to contract is made, and performance of the work or services will not create a contract; but if the request is made under such circumstances that a reasonable person would infer an intent to pay for them (and this is always a question of fact under all the circumstances of the case) the request amounts to an offer, and a contract is created by the performance of the work. * * * It is customary to lay down presumptions, as that 'with respect to strangers a contract for compensation will be implied unless a contrary situation is exhibited,' whereas as between relatives 'a contract alleged to exist must be affirmatively shown.' But it is undesirable to lay too much stress on such presumptions. They are mere inferences of fact. * * * The question is purely one of fact, varying in every case, but with the burden always on the party, who alleges a contract and seeks to enforce it, to prove its existence. * * *" 1 Williston, Contracts, Rev.Ed. § 36.

If the evidence leaves the facts undisputed, and they are such that different conclusions or inferences could not reasonably be drawn from them, it becomes the duty of the trial court to declare their legal effect; but if the facts are in dispute, or if undisputed, they are such that different impartial minds might fairly draw different conclusions from them, they should be submitted to the jury. Bates v. Fremont, E. & M. V. R. Co., 4 S.D. 394, 57 N.W. 72; McCormick v. Rapid City Nat. Bank, 67 S.D. 444, 293 N.W. 819, and Roberts v. Brown, 72 S.D. 479, 36 N.W.2d 665.

The evidence we are to consider is without conflict and reveals these simple facts and circumstances. Plaintiff and defendant were both connected with the quonset trade. They first met at a meeting of quonset men at Aberdeen. Plaintiff sold this quonset to Karrels and defendant contracted to erect the steel structure. While it was under construction plaintiff came to the job for reasons explained supra. Defendant testified, "Well, Norman came into the place and was, he was kind of joking and talking * * *. And he started jabbering with my men and myself and I told him,

I said, 'Norman the bull's got to go; you can stay if you want to'. And it didn't seem to make no difference. It just kept on going as it was. About that time we was about to raise this end wall and there was a few more words spoken there, I don't recall exactly what was said, but I told him if he would use a little of his wind as pressure and help us raise this end wall it would be appreciated." Plaintiff indicated assent and he was assigned a place at the upper end of one stud.

It seems patent to us that an impartial mind could reasonably infer from these circumstances as a whole and from the words spoken that a mere favor was sought and granted, and that neither party contemplated a contractual relation. The request for but a few minutes of physical exertion, and plaintiff was merely told that his help would be appreciated. Hence, we conclude that the court was not warranted in taking this issue of fact from the jury.

Leaning heavily upon Johnson v. Wisconsin Lumber & Supply Co., 203 Wis. 304, 234 N.W. 506, 72 A.L.R. 1279, defendant earnestly argues that the principle of liberal construction universally applied in dealing with Workmen's Compensation Acts justifies a holding that the evidence establishes, as a matter of law, plaintiff was serving defendant for pay under an implied contract. Entertaining the opinion that the evidence bearing on this issue offers room for a reasonable difference of opinion between impartial minds, we are persuaded that the cited principle of liberal construction cannot serve to justify a court in taking the issue from the triers of the fact.

Even though the plaintiff was serving the defendant gratuitously when injured he was an employee of defendant within the contemplation of our statutes (cf. SDC 17.0301, 17.0302) and is entitled to be indemnified by the defendant if his injuries were caused by defendant's want of ordinary care. SDC. 17.0203.

In Olson v. Kem Temple, Ancient Arabic Order, 77 N.D. 365, 43 N.W.2d 385, at page 387, in applying identical statutes, the North Dakota court wrote as follows: "Our statutory law recognizes but does not define a gratuitous employee. Sec. 34-0204, RCND 1943. It is clear that this

statute contemplates that one who undertakes to do a service for another at the other's request but without consideration is a gratuitous employee while engaged in the performance of such service. Sec. 34-0203, RCND 1943 provides that 'An employer, in all cases, shall idemnify his employee for losses caused by the former's want of ordinary care.' This provision is applicable in the case of a gratuitous employee as well as an employee for reward. * * *"

This brings us to the next specification of insufficiency upon which defendant moved for a directed verdict. It was said there was "no showing of neglect or negligence or lack of due care existed on the part of the defendant at the time and place of the accident which was in any way the proximate cause of the injury to the plaintiff * * *". The facts are undisputed.

The floor which had been poured by Rapid City Steel Structures measured 32 by 48 feet and was raised above the surface of the ground about 6 inches. Along 23 feet of the central part of one end of this floor there had been poured as an integral part thereof, a concrete approachway two feet wide. This approachway slanted down from a level 1¼ inches below the floor level to the ground. Thus, at the union of the floor and the approachway, a concrete lip 1¼ inches high had been formed. The approachway was designed to serve an 18-foot doorway to be constructed in that end of the quonset. Paralleling the described concrete lip and two inches therefrom there had been sunk in the concrete approachway an angle iron to serve as a guide to the 18-foot door. This guide extended above the surface of the approachway about one inch.

It was the wall of that end of the building which the parties attempted to raise. It had been assembled outside the concrete on the ground with the upper end thereof resting on sawhorses about 18 inches high. It consisted of two double studs made of steel measuring about 4 inches square, and 13 feet in length. These studs were designed to serve as a frame for the door and paralleled each other, spaced 18 feet apart. They were fastened together by a 36-foot steel wind girt attached to them at a point about 1 foot from their upper end. Where these studs were to rest

respectively on the concrete floor, when upright, channel plates had been placed. Extending through each channel plate were the ends of U-bolts which had been sunk in the concrete floor. Ultimately the ends of the steel studs were to be bolted to these channel plates and the concrete floor. The channel plates are described as having two opposite sides which extend upwards approximately one inch. These sides parallel the end wall, and are flush with the described 1¼-inch concrete lip. As the assemblage had been placed ready for raising, the lower end of the steel studs had been butted against the outer edge of the respective channel plates to which they were to be anchored after the wall was raised. The wind girt and the double steel studs weighed about 1,100 pounds.

The defendant had erected a scaffold, 8 feet high, just inside the end line of the concrete floor. A rope had been tied to the upper end of each steel stud at the point where the wind girt was attached so as to permit men standing on the scaffold to pull on the ropes, as men stationed at the end of the studs lifted, and thus to raise the wall to an upright position. Plaintiff was placed on the ground at the upper end of one stud. With him at that point was Mr. Bartels, described as 50 to 55 years of age, 5 feet 9 inches tall and weighing 150 to 160 pounds. On the scaffold above them was Clarence Nelson, 18 to 20 years of age, 5 feet 8 inches in height, weight 150 pounds. On the ground at the upper end of the other stud was Bob Davidson, 35 years of age, 5 feet 10 inches in height, and weight 180 to 185 pounds. On the scaffold above Mr. Davidson was the defendant, whose age, height and weight does not appear in the record. The fifth member of defendant's crew had been recently injured and was unable to assist in lifting the wall. He stood at the channel plate below defendant, and used his foot in an effort to prevent the end of the stud from slipping.

Plaintiff testified that as they attempted to raise the wall, his first effort was lifting the assemblage up and away from the sawhorses. He had a hold at about the point where the wind girt was attached to the stud. As the wall raised his effort changed to more of a pushing up and as he pushed, his hands walked downward along the stud.

When the wind girt was above his head they lost control and the assemblage fell to the ground. Plaintiff testified that he did not see what caused it to fall, but expressed the opinion that one of the studs slipped at the bottom.

After the fall, it was found that the lower end of the studs had thrust to the inside of the proposed structure and were resting on the concrete floor. The distance they were thrust inward is indicated by the fact that plaintiff was in the ground with his feet extending inside the line of the building on the concrete floor and the wind girt was resting across his hips. The ropes had not broken.

Plaintiff had seen quonsets under construction before but had never watched the raising of an end wall, and while he knew it was heavy, he did not know then how much it weighed.

A witness with considerable experience in the erection of such structures testified that no less than six men should be used in raising such an end wall, two at the upper end of each stud and two on the scaffold.

██ The defendant was under a duty to his employees to exercise reasonable care to provide a sufficient number of workers to enable those engaged in the work to carry it out with reasonable safety to themselves. Kansas City Stockyards Co. v. Anderson, 8 Cir., 199 F.2d 91, 36 A.L.R.2d 1, and Annotation; 35 Am. Jur., Master and Servant, § 197, p. 626; 56 C.J.S. Master and Servant § 307, p. 1069; and II Shearman & Redfield, Negligence, Rev.Ed., § 201.

In Johnson v. Ashland Water Co., 71 Wis. 553, 37 N.W. 823, at page 825, 5 Am. St.Rep. 243, it was written: "The courts have uniformily held that it is a duty which the employer owes his servants, when set to do any particular work, that he shall provide a sufficient number of men to do the work in a reasonably safe manner. This duty is placed on the same ground which requires the employer to furnish safe implements and appliances for doing the work, and a reasonably safe place in which the work is to be done. 3 Wood, Ry. Law, p. 1487, § 381, says: 'The term "appliances of the business" embraces, not only machinery, premises, and all the implements of every kind used in and about the

business, but also the persons employed to operate them; and the master must furnish a sufficient number of persons competent to perform the labor safely; and, when the failure to employ a sufficient number of hands to perform the particular service is the proximate cause of the injury, the master is liable unless the servant may fairly be said to have assumed the risk incident thereto.' "

The defendant, who was at hand and directing the work, was also under a duty to use reasonable care to employ a method of raising the wall which would permit the accomplishment of the work with reasonable safety to his employees. 3 Labatt's Master & Servant, 2d Ed., § 1017.

It follows that these principles contemplate such an adjustment of method and working force as will permit the doing of the work with reasonable safety to those engaged therein. It also follows that the failure to exercise ordinary care in these respects constitutes negligence.

Expert testimony afforded a jury a foundation for a finding that defendant was negligent because he failed to employ a sufficient number of hands to do the work in safety to his employees. In addition, we think the nature of the work was such that the jury could exercise an independent, intelligent judgment in disposing of that issue of negligence. Fitter v. Iowa Telephone Co., 143 Iowa 689, 121 N.W. 48; Central Kentucky Natural Gas Co. v. Salyer, 164 Ky. 718, 176 S.W. 183; Sorenson v. Northern Pac. Ry. Co., 53 Mont. 268, 163 P. 560; and Annotation 36 A.L.R.2d 8 at 35.

As we have indicated the defendant asserted also that the evidence is insufficient to support a finding that the negligence of defendant was a proximate cause of plaintiff's injuries.

■ The plaintiff seeks to invoke the rule of res ipsa loquitur in arguing that his evidence made out a prima facie showing that his injuries were proximately caused by the negligence of defendant. The defendant on the other hand seeks to persuade us that the rule is without application in the circumstances. As we have indicated supra there is evidence here which will support a finding that defendant was negligent in failing to supply a sufficient number of

hands to accomplish the raising of the wall in the manner attempted with reasonable safety to those engaged in the task. Because we think the evidenced circumstances are sufficient to support a finding that the negligence of defendant was a proximate cause of plaintiff's injuries, we are of the opinion that plaintiff need not rely on the rule of res ipsa loquitur in testing the sufficiency of his prima facie showing.

In Barger v. Chelpon, 60 S.D. 66, 243 N.W. 97, 98, in treating of the rule of res ipsa loquitur this court said, "It does not mean that negligence can be assumed from the mere fact of an accident and injury, but the expression that the thing speaks for itself is a short way of saying that the circumstances attending upon the accident are in themselves of such a character as to justify a jury in inferring negligence as the cause of the injury." That the circumstances to which reference is made in such statements do not refer to circumstances tending to directly establish negligence is made clear in Plumb v. Richmond Light & R. Co., 233 N.Y. 285, 135 N.E. 504, 505, 25 A.L.R. 685, in these words: "The term 'surrounding circumstances' in this connection refers not to circumstances directly tending to show lack of care * * * which tend in themselves to establish plaintiff's case, but only to mere neutral circumstances of control and management by the defendant, which may, when explained, appear to be entirely consistent with due care. * * *" The annotation at 59 A.L.R. 468 points up the distinction between cases in which res ipsa loquitur is properly invoked as the basis of an inference of actionable negligence, and those cases, where dependence is upon the evidenced circumstances directly tending to support a finding of such negligence.

Proximate cause of an injury is the immediate cause; and must be understood to be that which, in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, and without which it could not have happen. Joslin v. Linder, 26 S.D. 420, 128 N.W. 500; DeGooyer v. Harkness, 70 S.D. 26, 13 N.W.2d 815; and Hjermstad v. Petroleum Carriers, 74 S.D. 406, 53 N.W.2d 839. When the natural and continuous sequence of causal connection between the negligent conduct and the injury is

interrupted by a new and independent cause, which itself produces the injury, that intervening cause operates to relieve the original wrongdoer of liability. The intervening cause must be a superseding cause. It must so entirely supersede the operation of the defendant's negligence that it alone, without his negligence contributing thereto, produces the injury. I Shearman & Redfield, Negligence, Rev. Ed., §§ 37 and 38. And, of course, negligence, to render a person liable, need not be the sole cause of injury, but it is sufficient that his negligence concurring with one or more efficient negligent acts of third persons, is a proximate cause of the injury. Lapp v. J. Lauesen & Co., 67 S.D. 411, 293 N.W. 536; Rowan v. Becker, 73 S.D. 273, 41 N.W.2d 836; and Hjermstad v. Petroleum Carriers, 74 S.D. 406, 53 N.W.2d 839.

It will be recalled that as the wall was prepared for raising, the lower end of the steel studs were butted against the metal channel plates which had been installed flush with the described concrete lip. Necessarily, as the wall was raised these ends of the studs had to ride up and onto the top of the channel plates. And of course, the pressure generated by the lifting and pulling, and pushing and pulling on the upper end of the studs was exerted against the channel plates while the studs were riding upwards. Defendant had not attempted to secure the lower end of the studs.

It was foreseeable, because those on the ground were compelled to walk down the studs with their hands, and forward with their feet, and those on the scaffold had to walk along the ropes with their hands as the raising took place, that it would be difficult to so coordinate the effort of these five men as to maintain a constant firm pressure of the studs upon the channel plates. The hazard with metal so impinged on metal that the studs might slip to the side or over the channel plates was foreseeable. It was also foreseeable that if such a loss of contact between the studs and the channel plates should happen, and the studs were thrust inward along the concrete floor, those who were on the scaffold pulling on the ropes would immediately lose their purchase upon the mass, and the weight of the wall would

be largely cast upon those on the ground. It was also fore-seeable that this hazard was much enhanced because of the unwieldy character of the assemblage.

These facts and circumstances demonstrate, we think, that impartial minds could reasonably conclude that to accomplish the proposed work by the described method in reasonable safety to those engaged therein, a larger force of men was necessary to hold the wall steady as it was lifted and pushed into place, and that a greater force was necessary on the ground to sustain the whole weight of the wall in case of some loss of control.

These additional facts and circumstances require attention. The collapse was sudden and occurred when the wall was about half-way up. In the process the lower ends of the studs were actually thrust a considerable distance inward and came to rest on the concrete floor. The plaintiff was carried or walked forward. As he rested with the wind girt across his hips his lower limbs rested on the concrete floor. From these facts, we think a jury could reasonably conclude that the collapse resulted because the studs slipped off from the channel plates. Further, we are of the opinion, a jury could conclude that the collapse, and the resultant injury to the plaintiff was a natural and probable consequence of the failure of the employer to exercise ordinary care in providing an adequate working force.

The suggestion was made at bar that the collapse and the injury may have been caused by the negligence of a fellow servant for which the master is not liable. SDC 17.0202. True, the circumstances do not exclude the reasonable probability that the failure in some manner of one of the group to act in concert with the others engaged in the work actually incited the subsequent events. We do not decide whether it would be a negligent act for one of the group to either push or pull too hard or not hard enough. We think such an act of a fellow servant would not be of legal significance, even if it be assumed to constitute negligence. At most it could amount only to a concurrent proximate cause. Beasley v. Bond, 173 Okl. 355, 48 P.2d 299. Assuming a finding by the jury that the master was negligent in failing to provide an adequate working force, the facts, in

our opinion, exclude as a rational hypothesis that the act of a fellow servant completely superseded the causal effect of the master's negligence. Necessarily, in the circumstances, such an act would but commingle and combine with the described negligence of the defendant in producing the complete collapse and the injury. Assuming a fellow servant pushed violently or ceased to push or pull, we think impartial minds could conclude that a complete collapse would not have occurred if an adequate force had been in control of the wall. In other words, assuming some extreme conduct of a fellow servant, impartial minds could conclude that the injury would not have occurred without the negligence of the defendant.

The final specification of insufficiency made by defendant deals with the doctrine of assumption of risk. It was urged that the plaintiff had voluntarily assumed the risk from which the injury resulted.

A servant does assume the ordinary risks of the business in which he is engaged. SDC 17.0202. Such ordinary risks arise from causes other than the fault of the master. II Shearman & Redfield, Negligence, Rev.Ed., § 223. The general rule is that an employer must in all cases idemnify his employee for losses caused by the former's want of ordinary care. SDC 17.0202. Before it can be said that the plaintiff has voluntarily assumed such an extraordinary risk and danger as negligence of the master of the character we have been considering, it must be established that the risk and danger therefrom was obvious, or that plaintiff knew of the risk and its danger. Perreault v. Wisconsin Granite Co., 32 S.D. 275, 144 N.W. 110; Clinkscales v. Wisconsin Granite Co., 38 S.D. 205, 160 N.W. 843; Annotation 36 A.L.R.2d at 80; and II Shearman & Redfield, Negligence, Rev.Ed., § 29.

The facts and circumstances evidenced by plaintiff did not justify the trial court in concluding as a matter of law that plaintiff had voluntarily assumed the extraordinary risk and danger flowing from the negligence of the defendant considered supra. The plaintiff had little time in which to judge the situation. He had never assisted in a like operation and had never seen such a wall raised. He did

not then know the weight of the wall. It cannot be said, we think, that it would be obvious that with his help added to defendant's and that of his crew, the working force was inadequate. Further he knew defendant and of his experience in the work of erecting such structures. Defendant was at hand and participating in the work. In the circumstances, we think plaintiff had determined the work could proceed in the method selected with the available hands with reasonable safety to all engaged therein. It follows, we think, that it cannot be said as a matter of law that the described extraordinary risks, or its dangers were either obvious or known to plaintiff.

As indicated by all of the foregoing, we are of the opinion that the trial court erred in taking the issues from the jury.

The judgment and order are reversed.

RUDOLPH, RENTTO, and HANSON, JJ., concur.

ROBERTS, J. dissents.

ROBERTS, Judge (dissenting).

While I am in accord with the general principles of law as stated in the majority opinion, yet I am convinced that under plaintiff's own version of the relevant facts the rule that an employer is chargeable with negligence in failing to furnish a sufficient number of workmen to enable those engaged in the work to carry it out with reasonable safety to themselves is not applicable. I think the judgment should be affirmed.